No. 22-55170

# In the United States Court of Appeals for the Ninth Circuit

―――――――――――――

ROBERT ROMOFF and JOE SICILIANO,
on behalf of themselves and all others similarly situated,
*Plaintiffs-Appellants,*

v.

GENERAL MOTORS, LLC,
*Defendant-Appellee.*

―――――――――――――

On Appeal from the United States District Court
for the Southern District of California

―――――――――――――

## OPENING BRIEF OF PLAINTIFFS-APPELLANTS

―――――――――――――

KALIEL GOLD PLLC
Jeffrey D. Kaliel
Sophia Goren Gold
1100 15th St. NW, 4th Floor
Washington, D.C. 20005
Telephone: (202) 350-4783.

KOPELOWITZ OSTROW FERGUSON
WEISELBERG GILBERT
Jason H. Alperstein
1 West Las Olas, Suite 500
Fort Lauderdale, Florida 33301
Telephone: (954) 525-4100

CREED & GOWDY, P.A.
Bryan S. Gowdy
Florida Bar No. 0176631
bgowdy@appellate-firm.com
865 May Street
Jacksonville, Florida 32204
Telephone: (904) 350-0075

―――――――――――――

*Counsel for Plaintiffs-Appellants*

## <u>DISCLOSURE STATEMENT</u>

Appellants, who are individuals, are not required to submit a disclosure statement.  *See* Fed. R. App. P. 26.1.

# <u>TABLE OF CONTENTS</u>

Disclosure Statement ........................................................... i

Table of Contents ............................................................ ii

Table of Authorities......................................................... v

Introduction.................................................................. 1

Jurisdictional Statement...................................................... 2

Statutory and Regulatory Authorities...................................... 3

Statement of the Issues....................................................... 3

Statement of the Case ........................................................ 3

    A.    Statement of Facts................................................ 4

    B.    Course of Proceedings and Disposition Below ...................... 8

Summary of Argument....................................................... 10

Standard of Review and Reviewability..................................... 13

Argument..................................................................... 13

I.    The district court erred in dismissing the consumer protection claims because Plaintiffs plausibly alleged that reasonable consumers are likely to be deceived by General Motors' practice and there is no other basis on which to affirm its order............. 13

    A.    The state laws governing Plaintiffs' claims ........................ 14

1. California's Unfair Competition Law ............................. 14

2. California's Consumer Legal Remedies Act ................... 16

3. New Jersey's Consumer Fraud Act ................................ 17

B.   The district court's errors ................................... 18

1. The district court ignored state-court decisions establishing that a disclosed charge can constitute a deceptive business practice...........................................19

2. This is not the rare case in which "common sense" warrants dismissal as a matter of law...........................27

C.   There is no other basis on which to affirm the district court's dismissal of Plaintiffs' state-law consumer protection claims.................................................................... 35

1. Plaintiffs have plausibly alleged an injury an ascertainable loss...................................................36

2. Plaintiffs have plausibly alleged an omission of material fact and facts giving rise to a duty to disclose...............38

3. Plaintiffs have plausibly alleged actual reliance and causation.............................................................43

4. Plaintiffs may pursue their equitable claims at this early stage of the litigation.......................................45

5. Plaintiffs' allegations satisfy Rule 9(b)....................47

II. The district court erred in dismissing Plaintiffs' unjust enrichment claims for the same reasons it erred in dismissing Plaintiffs' consumer-protection claims. ........................50

Conclusion ........................................................................51

Statement of Related Cases ...............................................51

Certificate of Compliance...................................................52

Certificate of Service ........................................................52

Addendum………………………………………………ADD-1

# TABLE OF AUTHORITIES

## CASES

*Aron v. U-Haul Co. of Calif.*,
   143 Cal. App. 4th 796, 49 Cal. Rptr. 3d 555 (2006) ................. 15, 16, 23

*Barry v. Arrow Pontiac, Inc.*,
   494 A. 2d 804 (N.J. 1985) ................................................... 31, 32, 33, 39

*Becerra v. Dr. Pepper/Seven Up, Inc.*,
   945 F. 3d 1225 (9th Cir. 2019).............................................................28

*Bill v. Brewer*,
   799 F.3d 1295 (9th Cir. 2015)..............................................................13

*Bosland v. Warnock Dodge, Inc.*,
   964 A.2d 741 (N.J. 2009) ....................................................................36

*Brady v. Bayer Corp.*,
   26 Cal. App. 5th 1156, 237 Cal. Rptr. 3d 683 (2018) ..................... 16, 26

*Byler v. Deluxe Corp.*,
   222 F. Supp. 3d 885 (S.D. Cal. 2016) ..................................................23

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Telephone Co.*,
   20 Cal. 4th 163, 973 P.2d 527 (1999) ............................................ 14, 15

*Chapman v. Skype, Inc.*,
   220 Cal. App. 4th 217, 162 Cal. Rptr. 3d 864 (2013) ...........................43

*Collins v. eMachines, Inc.*,
   202 Cal. App.4th 249 (2011) ........................................................ 40, 41

*Concha v. London*,
   62 F.3d 1493 (9th Cir. 1995) ........................................................ 48, 49

*Cox v. Sears Roebuck & Co.*,
   647 A. 2d 454 (N.J. 1994) ............................................................. 17, 18

*Daniel v. Ford Motor Co.*,
   806 F.3d 1217 (9th Cir. 2015) ............................................................ 44

*Davis v. Metro Prods., Inc.*,
   885 F.2d 515 (9th Cir. 1989) .............................................................. 25

*Deere Const., LLC v. Cemex Const. Materials Fla., LLC*,
   198 F. Supp. 3d 1332 (S.D. Fla. 2016) ................................................. 31

*Div. of Consumer Affairs v. General Elec. Co.*,
   582 A.2d 831 (N.J. Super. Ct. App. Div. 1990) .................................... 17

*Ebner v. Fresh, Inc.*,
   838 F.3d 958 (9th Cir. 2016) .......................................................... 25, 26

*Erie R. Co. v. Tompkins*,
   304 U.S. 64 (1938) ......................................................................... 1, 24

*Friedman v. AARP, Inc.*,
   855 F.3d 1047 (9th Cir. 2017) ............................................................ 43

*Gutierrez v. Carmax Auto Superstores Calif.*,
  19 Cal. App. 5th 1234, 248 Cal. Rptr. 3d 61 (2018) ........... 15, 38, 39, 41

*Hinojos v. Kohl's Corp.*,
  718 F.3d 1098 (9th Cir. 2013) ............................................. 36, 37, 38, 39

*Hodson v. Mars, Inc.*,
  891 F. 3d 857 (9th Cir. 2018) ......................................................... 41, 42

*Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*,
  929 A.2d 1076 (N.J. 2007) ............................................................. 18, 44

*Jefferson v. Chase Home Fin. LLC*,
  No. C06 6510, 2007 WL 1302984 (N.D. Cal. May 3, 2007) ................. 23

*Kasky v. Nike, Inc.*,
  27 Cal. 4th 939, 119 Cal. Rptr. 2d 296 (2002) ...................................... 45

*Katz v. Live Nation, Inc.*,
  No. 09-3740, 2010 WL 2539686 (D.N.J. June 17, 2010) ...................... 24

*Kwikset Corp. v. Superior Court*,
  51 Cal. 4th 310, 120 Cal. Rptr. 3d 741, 246 P.3d 877 (2011)... 36, 37, 43

*Latman v. Costa Cruise Lines, N.V.*,
  758 So. 2d 699 (Fla. Dist. Ct. App. 2000) ...................................... 30, 31

*Leon v. Rite Aid Corp.*,
  774 A.2d 674 (N.J. Super. Ct. App. Div. 2001) ........................ 17, 18, 24

vii

*McKell v. Washington Mut., Inc.,*
   142 Cal. App. 4th 1457, 49 Cal. Rptr. 3d 227 ............................. passim

*Mitchell v. Whole Foods Mkt. Group, Inc.,*
   20 Civ. 8496, 2022 WL 657044 (S.D.N.Y. Mar. 4, 2022)......................29

*Moore v. Kayport Package Exp., Inc.,*
   885 F.2d 531 (9th Cir. 1989)......................................................... 48, 49

*Moore v. Mars Petcare US, Inc.,*
   966 F.3d 1007 (9th Cir. 2020)................................................ 4, 12, 13, 27

*Muniz v. United Parcel Serv., Inc.,*
   738 F.3d 214 (9th Cir. 2013)................................................................ 14

*Patricia A. Murray Dental Corp. v. Dentsply Int'l, Inc.,*
   19 Cal. App. 5th 258, 227 Cal. Rptr. 3d 862 (2018) ............. 1, 11, 15, 19

*People v. Dollar Rent-A-Car Syst., Inc.,*
   211 Cal. App. 3d 119, 259 Cal. Rptr. 191 (1989).................................23

*Rutledge v. Hewlett-Packard Co.,*
   238 Cal. App. 4th 1164, 190 Cal. Rptr. 3d 411 (2015) .........................41

*Singleton v. Wulff,*
   428 U.S. 106 (1976)............................................................................35

*Sonner v. Premier Nutrition Corp.,*
   971 F.3d 834 (9th Cir. 2020) ........................................................ 46, 47

*Suarez v. E. Int'l Coll.*,
    50 A.3d 75 (N.J. Sup. Ct. App. Div. 2012)............................................38

*Union Ink Co. v. AT&T Corp.*,
    801 A.2d 361 (N.J. Super. Ct. App. Div. 2002) .............. 1, 11, 12, 18, 20

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003)...............................................................48

*West v. Am. Tel. & Tel. Co.*,
    311 U.S. 223 (1940)..................................................................1, 14, 22

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008)..........................................................16, 27

*Wilson v. Hewlett-Packard Co.*,
    668 F.3d 1136 (9th Cir. 2012)...............................................................40

*Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio*,
    471 U.S. 626 (1985)..............................................................................32

## **Statutes**

15 U.S.C. § 1232 .........................................................................1, 6, 42

28 U.S.C. § 1291 .........................................................................................2

28 U.S.C. §§ 1332(d)(2)and (6) .................................................................2

Cal. Bus. & Prof. Code §17200 ................................................8, 14, 34, 1

Cal. Civ. Code § 1750 ................................................................................8

Cal. Civ. Code § 1760 ............................................................. 1, 16

Cal. Civ. Code § 1770 ............................................................. 1, 16

Cal. Civ. Code § 1780(a)(2) ......................................................... 45

N.J. Stat. Ann. § 56:8-1 ............................................................... 8

N.J. Stat. Ann. § 56:8-2 ........................................... 1, 17, 34, 35, 38

## **Rules**

9th Cir. R. 28–2.5 ..................................................................... 13

9th Cir. Rule 32-1(a) ................................................................. 52

Fed. R. App. P. 4(a)(1)(A) ........................................................... 3

Fed. R. App. P. 26.1 .................................................................... i

Fed. R. App. P. 32 ..................................................................... 52

Fed. R. Civ. P. 8 ...................................................................... 45

Fed. R. Civ. P. 9(b) .............................................................. 48, 49

## <u>INTRODUCTION</u>

California's laws prohibit business practices that are "likely to deceive the public," and its courts inquire as to the "likely effect [the] practice would have on a reasonable consumer." *Patricia A. Murray Dental Corp. v. Dentsply Int'l, Inc.*, 19 Cal. App. 5th 258, 227 Cal. Rptr. 3d 862, 873 (2018). New Jersey's courts apply a similar "average consumer" standard under its consumer-protection statute. *Union Ink Co. v. AT&T Corp.*, 801 A.2d 361, 379 (N.J. Super. Ct. App. Div. 2002).

Federal courts must apply state laws as the state's highest court would. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). In "ascertaining state law," a federal court may not "disregard[]" a decision of a state appellate court "unless it is convinced by other persuasive data" that the state's highest court "would decide otherwise." *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940). The district court disregarded an on-point state decision—*McKell*, 49 Cal. Rptr. 3d at 239-40—as well as other state decisions when it decided at the pleadings stage that General Motors' Destination Charge was not likely to deceive a reasonable consumer. This was error.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d)(2) and (6). ER-105, ¶ 9. At least one member of Plaintiffs' class has diversity of citizenship from Defendant, General Motors LLC, and the aggregate claims of the class exceed $5 million. The sole member of Defendant, General Motors LLC, is General Motors Holding LLC, and the sole member of the latter LLC is General Motors Company.  General Motors Company is a corporation organized under the laws of Delaware, and it has its principal place of business in Michigan. Thus, General Motors LLC is a citizen of Delaware and Michigan. In contrast, Plaintiff Romoff is a citizen of California, as he is domiciled and resides in California, and Plaintiff Siciliano is a citizen of New Jersey, as he is domiciled and resides in New Jersey.

This appeal is from a final order disposing of all parties' claims, and thus, this Court has jurisdiction under 28 U.S.C. § 1291. The district court issued an order dismissing Plaintiffs' complaint without prejudice. ER-21. After Plaintiffs notified the court that they did not intend to move for leave to amend their complaint, ER-9, the district court dismissed Plaintiffs' action, ER-6–7.

The final order being appealed was entered on January 18, 2022. ER-6–7. Thus, the notice of appeal filed on February 14, 2022 (ER-121–123) was timely. *See* Fed. R. App. P. 4(a)(1)(A).

## STATUTORY AND REGULATORY AUTHORITIES

Relevant statutory authorities appear in an addendum to this brief.

## STATEMENT OF THE ISSUES

Whether the district court erred in dismissing Plaintiffs' state-law consumer protection and unjust enrichment claims where Plaintiffs plausibly alleged that reasonable consumers are likely to be deceived by General Motors' Destination Charge.

## STATEMENT OF THE CASE

This appeal arises out of a challenge by Plaintiffs-Appellants, Robert Romoff and Joe Siciliano, on behalf of themselves and all others similarly situated, to the Destination Charge imposed by Defendant-Appellant, General Motors, LLC, on every consumer that purchases or leases one of its vehicles in the United States. ER-102–120. Plaintiffs have alleged that General Motors' practice of charging its consumers substantially more for shipping their vehicles to their destination than the actual cost incurred by General Motors, without disclosing to its consumers that it is doing so, violates California's and New Jersey's

consumer protection laws and unjustly enriches General Motors. ER-102–120. The district court granted General Motors' motion to dismiss the complaint (ER-11–21), and this appeal followed (ER-121–123).

### A. Statement of Facts

The relevant facts are taken from the complaint's allegations "because the district court dismissed the complaint on the pleadings." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1012 (9th Cir. 2020).

Automobile manufacturers typically add a "destination fee" to the price of their vehicles that is charged to the dealer and then passed along to consumers. ER-103, 108–109, ¶¶2–3, 30, 34. In the automotive industry, this destination fee is generally understood to reflect the manufacturer's average cost of transporting a vehicle to a dealership. ER-103, ¶2. Consumers purchasing or leasing a new vehicle likewise expect destination fees to reflect the manufacturer's cost of transporting a vehicle to a dealership. ER-103, 108, ¶¶2, 32–33.

Defendant General Motors, an automobile manufacturer (ER-107, ¶24), adds a destination fee to the price of its new vehicles and separately labels that fee on a line item as a "Destination Charge." ER-103, ¶3. The Destination Charge is not negotiable, as consumers purchasing or leasing

a General Motor vehicle have no choice but to pay the full amount of the Destination Charge. ER-103–104, ¶4. Consumers expect that the Destination Charge is directly related to General Motors' cost of transporting a vehicle to its destination. *Id*. Consumers are at an informational disadvantage. General Motors knows what it costs to ship its vehicles to their destination, while consumers do not. ER-108, ¶31.

Unfortunately for these consumers, General Motors uses its Destination Charge to extract hidden markups. ER-103, 107, ¶¶3, 25–28. That is, contrary to consumer expectations and the automotive industry's understanding of a destination fee, General Motors' Destination Charge is unrelated to the actual cost of transporting a vehicle to a dealer and is instead comprised largely of profit. ER-104, 107–108, ¶¶5, 28–31. The Destination Charge thus conceals profit that would otherwise appear in the Manufacturer's Suggested Retail Price of the vehicle—which, unlike the Destination Charge, is a negotiable number which consumers would expect to include profit. ER-107–108, ¶¶27, 32.

General Motors fails to disclose to its consumers the profit-based nature of its Destination Charge. *E.g.*, ER-109, ¶35. Instead, General Motors discloses only the amount of the Destination Charge on the

federally required Monroney Sticker. ER-103–04, 108 ¶¶4, 33 (referencing Automobile Information Disclosure Act, 15 U.S.C. § 1232). General Motors' Monroney Stickers break out the Destination Charge as a line-item charge, separate and apart from the Manufacturer's Suggested Retail Price. ER-107, 108–109, ¶¶27, 34. Nowhere does General Motors disclose that its Destination Charge far exceeds the actual costs it pays to transport its vehicles to dealers. ER-109, ¶35.

General Motors' conduct differs markedly from its competitors, who routinely disclose whether their destination fees include profit. ER-108–109, ¶34. For example, while Toyota explains on its website that it "may make a profit" on its destination fee, General Motors makes no such disclosure. *Id.* Furthermore, although General Motors' competitors have increased their destination fees by less than twenty percent over the past decade, General Motors' Destination Charges have increased by an average of thirty-four percent since 2011, and currently reach as high as $1,695. ER-103, 107–108, ¶¶3, 29–30. The increase in General Motors' Destination Charge is not correlated with any actual increase in the costs of shipping. ER-108, ¶30.

As a result of General Motors' practice, consumers have been misled into paying more than the cost of vehicle delivery and overpaying for their vehicles. ER-103–104, ¶¶1, 5, 7. That is, consumers have purchased or leased vehicles that they would not have purchased or leased, or that they would have paid less for, had they known that General Motors was charging them substantially more for shipping their vehicles to their destination than the actual cost incurred by General Motors. ER-104, ¶¶5, 7.

Plaintiffs are two such consumers. ER-105–106, ¶¶12–22. Mr. Romoff paid a $1,195 Destination Charge when purchasing a new vehicle in California. ER-105–106, ¶¶12–17. Mr. Siciliano paid a $995 Destination Charge when purchasing a new vehicle in New Jersey. ER-106, ¶¶18–22. Both Mr. Romoff and Mr. Siciliano paid these non-negotiable Destination Charges based on their reasonable but mistaken belief that the charges reflected General Motors' cost to deliver their vehicles to the dealers. ER-105–106, ¶¶12–22.

### B. Course of Proceedings and Disposition Below

Plaintiffs' complaint alleged that General Motors' Destination Charge practice violates California's Unfair Competition Law (Cal. Bus. & Prof. Code §17200, et seq.); California's Consumer Legal Remedies Act (Cal. Civ. Code § 1750, et seq.); and New Jersey's Consumer Fraud Act (N.J. Stat. Ann. § 56:8-1, et seq.), and also unjustly enriches General Motors. ER-102–120. General Motors moved to dismiss under Rule 12(b)(6) (ER-70–101), Plaintiffs opposed (ER-39–69), and General Motors replied (ER-22–38). The district court granted the motion. ER-11–21. The district court later dismissed the action after Plaintiffs notified the court that they did not intend to seek leave to amend their complaint. ER-6–9.

The district court's dismissal order hinges on its determination that one cannot plausibly infer that General Motors' Destination Charge practice would deceive a reasonable consumer. ER-14–21. Although the district court acknowledged that consumer deception is typically a question of fact inappropriate for resolution at the motion-to-dismiss stage, it nevertheless determined that, in this case, "common sense" dictated otherwise. ER-17–18.

The district court relied on a dictionary definition of "charge"—"the price demanded for something"—to conclude that a reasonable consumer "would not be surprised to learn that the price of goods often includes profit for the seller." ER-17–18 (quoting Merriam Webster's online dictionary). The district court further concluded the context of vehicle sales did "not alter the common-sense understanding that a charge can include profit" because the Destination Charge and total vehicle price were disclosed per federal law. ER-18. Stated differently, the district court reasoned that the Destination Charge was not deceptive because it was disclosed along with the total price, and dismissed Plaintiffs' claims on that ground. ER-17–21. The district court did not address the contrary state caselaw briefed by Plaintiffs establishing that disclosed fees *can* be deceptive when couched in a manner that is likely to mislead a consumer. *See, e.g.*, ER-11–21 (failing to address *McKell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457, 49 Cal. Rptr. 3d 227 (2006)).

## SUMMARY OF ARGUMENT

State—not federal—courts are the final arbiters of state law. The district court overlooked this elementary principle of federalism when it rejected Plaintiffs' state-law claims that General Motors' Destination Charge was likely to deceive a reasonable consumer.

In a materially indistinguishable state case, a defendant separately listed line-item charges for services—as required by federal law—that, in fact, were inflated and substantially exceeded the costs of such services. A California appellate court concluded this "practice of charging … customers more for services than the actual cost of those services, with no indication to the customers that [the defendant was] doing so, may constitute a deceptive business practice" under California law because "a reasonable consumer likely would believe that fees charged in connection with a home mortgage loan bore some correlation to services rendered." *McKell*, 49 Cal. Rptr. 3d at 240.

*McKell* is on point. A reasonable consumer likely would believe that fees charged in connection with an automobile purchase or lease bore some correlation to the services rendered. Though Plaintiffs prominently argued *McKell* below (ER-50–52), the district court never mentioned it

once in its opinion (ER-11–21). *McKell* is persuasive of how California's highest court would rule in this case, and under principles of federalism, the district court could not disregard that decision. It had to follow that decision.

*McKell* is consistent with other California decisions and New Jersey caselaw applying that state's similar consumer-protection statue. Courts in both states recognize that a literally true statement, if couched in a manner that is likely to deceive the reasonable or average consumer, is actionable. *Patricia A. Murray Dental Corp.*, 227 Cal. Rptr. at 873; *Union Ink Co.,* 801 A.3d at 379. When a consumer is told that he must pay a non-negotiable *Destination* Charge, he reasonably expects that charge compensated for the manufacturer's costs to deliver the vehicle to its *destination*. He does not reasonably expect that charge to be inflated to give the manufacturer a profit. A reasonable or average consumer likely is deceived by such a practice. This allegation is plausible.

The district court, however, improperly disregarded the state caselaw and instead relied on its own "common sense." Yet, as the district court acknowledged, under this Court's caselaw, "[w]hether a practice is deceptive will usually be a question of fact not appropriate for decision

on … [a] motion[] to dismiss." ER-17 (internal quotations omitted) (quoting *Moore*, 966 F.3d at 1017). The state courts agree. *McKell*, 49 Cal. Rptr. 3d at 240; *Union Ink Co.*, 801 A.2d at 379. Because Plaintiffs plausibly stated a claim under the state consumer-protection laws, they should be able to proceed to the next stage to present their evidence of consumer deception.

The other bases on which General Motors sought dismissal were not considered by the district court, and thus, this Court may remand for the district court to consider them in the first instance. If this Court decides to consider the other bases, none of them warrant dismissal. Plaintiffs have plausibly alleged: an injury and ascertainable loss; an omission of material fact and facts giving rise to a duty to disclose; and actual reliance and causation. They may pursue their equitable claims at this stage of the litigation. Insofar as Rule 9(b)'s heightened pleading standard applies, Plaintiffs have satisfied it.

Finally, the district court erred in dismissing Plaintiffs' unjust enrichment claims for the same reasons it erred in dismissing Plaintiffs' consumer-protection claims.

## STANDARD OF REVIEW AND REVIEWABILITY

This Court reviews "*de novo* the district court's granting of a motion to dismiss for failure to state a claim." *Bill v. Brewer*, 799 F.3d 1295, 1299 (9th Cir. 2015). "All allegations of material fact in the complaint are taken as true and construed in the light most favorable to Plaintiffs." *Moore*, 966 F.3d at 1016. Plaintiffs raised the issues on appeal in their memorandum opposing the motion to dismiss (ER-49-67), and the district ruled on the issues in its order granting the motion to dismiss (ER-15–21). *See* 9th Cir. R. 28–2.5.

## ARGUMENT

I. **The district court erred in dismissing the consumer protection claims because Plaintiffs plausibly alleged that reasonable consumers are likely to be deceived by General Motors' practice and there is no other basis on which to affirm its order.**

The district court's dismissal of Plaintiffs' state-law consumer protection claims is premised on its error that, as a matter of law, General Motors' Destination Charge could not deceive a reasonable consumer. The district court was wrong. *See* § I.B, *infra* at 19–35. To explain why, Plaintiffs first provide an overview of the consumer protection laws upon which their claims are based. *See* § I.A, *infra* at 14–18.

13

## A.   The state laws governing Plaintiffs' claims

Plaintiffs' complaint alleges violations of three state laws: California's Unfair Competition Law; California's Consumer Legal Remedies Act; and the New Jersey's Consumer Fraud Act. ER-113-118. As a federal court sitting in diversity, this Court must apply state substantive law as interpreted by the state supreme courts. *See e.g., Muniz v. United Parcel Serv., Inc.*, 738 F.3d 214, 219 (9th Cir. 2013). This Court "should … follow a published intermediate state court decision regarding [state] law unless [it] is convinced that the [state] [s]upreme [c]ourt would reject it." *Id.*; *accord West*, 311 U.S. at 237.

### 1.   California's Unfair Competition Law

California's Unfair Competition Law prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The scope of this law is "broad," and "[i]ts coverage is sweeping." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180, 973 P.2d 527 (1999).

Because it is written in the disjunctive, California's Unfair Competition Law "establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." *Id.* A practice is "unlawful" if it violates other laws, including California's Consumer

14

Legal Remedies Act, and a practice may be "unfair even if not specifically proscribed by some other law," such that "a practice is prohibited as 'unfair' or 'deceptive' even if not 'unlawful' and vice versa." *Id.*; *Gutierrez v. Carmax Auto Superstores California*, 19 Cal. App. 5th 1234, 248 Cal. Rptr. 3d 61, 68 (2018), *as modified on denial of* reh'g (Feb. 22, 2018) (concluding a "violation of the [Consumer Legal Remedies Act] serves as the predicate violation of law necessary to establish the unlawful practice variety of unfair competition that is actionable under the [Unfair Competition Law]"). A practice is "fraudulent" if it is "likely to deceive the public." *Patricia A. Murray Dental Corp.*, 227 Cal. Rptr. 3d at 873.

To state a cause of action under this law, a "plaintiff must demonstrate that 'members of the public are likely to be deceived,'" *Aron v. U-Haul Co. of Calif.*, 143 Cal. App. 4th 796, 49 Cal. Rptr. 3d 555, 562 (2006), which "is based on the likely effect such practice would have on a reasonable consumer," *Patricia A. Murray Dental Corp.*, 227 Cal. Rptr. 3d at 873. The reasonable consumer standard requires a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* Consumer deception is a "question of fact, requiring consideration and

weighing of evidence from both sides before it can be resolved." *McKell*, 49 Cal. Rptr. 3d at 240; *accord Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).

### 2. California's Consumer Legal Remedies Act

California's Consumer Legal Remedies Act prohibits enumerated "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770(a)(5), (9). This Act must be "liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Cal. Civ. Code § 1760.

Like California's Unfair Competition Law, a "plaintiff must demonstrate that 'members of the public are likely to be deceived'" to state a cause of action under the Act. *Aron*, 49 Cal. Rptr. 3d at 562. The "reasonable consumer" test applies, and whether a practice is unfair or deceptive under the Act is a question of fact that usually cannot be resolved at the pleading stage. *See Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 237 Cal. Rptr. 3d 683, 689 (2018); *accord Williams*, 552 F.3d at 938.

### 3. New Jersey's Consumer Fraud Act

New Jersey's Consumer Fraud Act imposes liability on any person who uses: "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise…" N.J. Stat. Ann. § 56:8-2. This broad definition of unlawful practice covers affirmative acts and knowing omissions. *See Cox v. Sears Roebuck & Co.*, 647 A. 2d 454, 461-62 (N.J. 1994). The Act is "designed to promote the disclosure of relevant information to enable the consumer to make intelligent decisions." *Div. of Consumer Affairs v. General Elec. Co.*, 582 A.2d 831, 833 (N.J. Super. Ct. App. Div. 1990). The Act is "aimed at more than the stereotypic con man," *Leon v. Rite Aid Corp.*, 774 A.2d 674, 679 (N.J. Super. Ct. App. Div. 2001), and it "should be construed liberally in favor of consumers," *Cox*, 647 A. 2d at 461-62.

To state a claim under New Jersey's Consumer Fraud Act, a plaintiff must allege "(1) unlawful conduct…; (2) an ascertainable loss…; and (3) a causal relationship between the defendants' unlawful conduct

and the plaintiff's ascertainable loss." *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 929 A.2d 1076, 1086 (N.J. 2007). Like its California counterpart, New Jersey's Act specifies in the "disjunctive" "the conduct that will amount to an unlawful practice," meaning that "[p]roof of any one of those acts or omissions" are "sufficient to establish unlawful conduct under the Act." *Cox*, 647 A.2d at 462.

The "capacity to mislead is the prime ingredient" of a claim under New Jersey's Act. *Id*. The "average consumer" standard applies. *Union Ink Co.*, 801 A.2d at 379. "When the alleged violation is an affirmative act, [a] plaintiff need not prove [the] defendant's intent nor even necessarily actual deceit or fraud." *Leon*, 774 A.2d at 677. Instead, a plaintiff must merely show that the defendant's conduct lacked "'good faith, honesty in fact, and observance of fair dealing." *Cox*, 647 A. 2d at 462. Whether a practice violates the Act "presents a question of fact in most cases." *Union Ink Co.*, 801 A.2d at 379.

### B.    The district court's errors

The district court's primary rationale for dismissing plaintiffs' consumer protection claims was two-fold: (1) the Destination Charge was not deceptive because it was disclosed with the total vehicle price; and (2)

it is common sense that a charge can include profit. ER-18. The district court was wrong on both counts.

> **1.** **The district court ignored state-court decisions establishing that a disclosed charge can constitute a deceptive business practice.**

This case is not premised on General Motors's failure to disclose a charge. It is instead premised on General Motors' affirmative misrepresentations and omissions relating to the nature of the charge. Yet, the district court dismissed Plaintiffs' claims on the basis that "the amount and existence of the Destination Charge and the total listed sticker price of [General Motors'] vehicles were fully disclosed." ER-18. The district court's simplistic analysis misapprehends Plaintiffs' theory of the case and, more importantly, disregards state-court decisions establishing that a disclosed charge can constitute a deceptive business practice that is actionable under the state consumer-protection laws at issue here.

California and New Jersey courts have held that "perfectly true statement[s]," if "couched in a manner that is likely to mislead or deceive the consumer," are actionable under their consumer-protection laws. *See, e.g.*, *Patricia A. Murray Dental Corp.*, 227 Cal. Rptr. at 873 (quoted);

*Union Ink Co.,* 801 A.3d at 379 ("Even if an advertisement is literally true, it may be actionable if the overall impression it creates is misleading and deceptive to an ordinary reader.") (quotations and alterations omitted). Under this principle, a fee or charge, even if fully disclosed, may nevertheless be deceptive. *See, e.g.*, *McKell*, 49 Cal. Rptr. 3d at 239-40.

In *McKell* (a California appellate decision), the plaintiffs alleged that, as a condition of obtaining their home loans, the defendant had "required them to pay the costs of automatic underwriting and wire transfers," and that defendant did so "by disclosing on the HUD-1 Settlement Statement the purported costs of these fees." 49 Cal. Rptr. 3d at 234-35. Yet, the plaintiffs alleged, the cost to defendant of providing those services was "substantially less than the amounts [defendant] represents on its HUD-1 Settlement Statement." *Id.* The plaintiffs alleged that the defendant "list[ed] the inflated underwriting charge on the HUD-1 Settlement while failing to disclose that this [charge was] not the actual cost incurred," and that the defendant "charg[ed] borrowers [wire transfer] fees … well above its costs, without performing any additional services and without disclosing the markup." *Id.* at 235. The

20

plaintiffs claimed these practices were deceptive to a reasonable consumer. *Id.* The trial court determined that the plaintiffs' allegations were insufficient to state a cause of action under California's Unfair Competition Law, *inter alia*, and dismissed the action. *Id.* at 236.

The California appellate court reversed. It determined the plaintiffs had stated a cause of action under California's Unfair Competition Law based on fraudulent, unfair, and unlawful business practices.[1] *Id.* at 238-241, 252. Specifically, it concluded the defendant's practice "of charging its customers more for services than the actual cost of those services, with no indication to the customers that they were doing so, may constitute a deceptive business practice" under the Unfair Competition Law because "a reasonable consumer likely would believe that fees charged in connection with a home mortgage loan bore some correlation to services rendered." *Id.* at 240. It further concluded that "the statement merely lists the charge imposed does not preclude a finding it is deceptive," and rejected the defendant's argument that "its business practices cannot be

---

[1] The *McKell* court concluded the Consumer Legal Remedies Act was inapplicable because the defendant's actions were undertaken in a real-estate transaction, not "a transaction intended to result or which results in the sale or lease of *goods* or *services*," as required by the statute. 49 Cal. Rptr. 3d at 253.

considered deceptive or fraudulent[] in that federal law only requires that the HUD-1 statement itemize the charges imposed on the buyer and seller." *Id.*

*McKell* is on point. Plaintiffs here have alleged that (1) General Motors required them to pay a Destination Charge as part of their automobile purchase or lease by disclosing on the federally required Monroney Sticker the purported cost of such charge; (2) that General Motors' costs of getting their vehicles to their destination was substantially less than the amount it represents on the Monroney Sticker; and (3) that General Motors concealed this practice from consumers by separately listing the inflated Destination Charge on the Monroney Sticker while failing to disclose that this is not the actual cost incurred. *See* Statement of Facts, *supra* at 4–7. These allegations are substantively indistinguishable from those that the California court deemed sufficient to state a consumer protection claim under California law in *McKell*.

This Court may not disregard *McKell* "unless it is convinced by other persuasive data" that California's highest court "would decide otherwise." *West*, 311 U.S. at 237. No such persuasive data exists. *McKell*

22

is not an outlier.[2] Other California courts have relied on similar reasoning and reached similar decisions. *See Aron*, 49 Cal. Rptr. 3d at 562 (plaintiff plausibly alleged deceptive business practice under Unfair Competition Law because there was no connection between the imposition of a $20 fueling fee where "fuel is not in fact replaced and this fact is not disclosed to the consumer"); *People v. Dollar Rent-A-Car Systems, Inc.*, 211 Cal. App. 3d 119, 259 Cal. Rptr. 191, 197 (1989) ("Defendants' practice of charging its customers a higher 'retail repair rate without explanation or substantiation is a deceptive business practice."); *see also Byler v. Deluxe Corp.*, 222 F. Supp. 3d 885, 900-02 (S.D. Cal. 2016) (plaintiffs stated claims under California's Unfair Competition Law and Consumer Legal Remedies Act, as well as multiple other state consumer-protection statues, where they alleged defendant's shipping fees did not represent the actual costs incurred in shipping).

---

[2] Some courts have found aspects of *McKell*'s reasoning—unrelated to the issue here—not to be persuasive. *See, e.g.*, *Jefferson v. Chase Home Fin. LLC*, No. C06 6510, 2007 WL 1302984, at *2 (N.D. Cal. May 3, 2007) (rejecting *McKell*'s conclusion that the Consumer Legal Remedies Act did not apply to services offered in connection with a sale of real property). None of these other decisions undermine the aspects of *McKell*'s reasoning on which Plaintiffs reply.

*McKell* is consistent with caselaw applying New Jersey's Act. *See, e.g., Leon*, 774 A.2d at 680 (plaintiffs alleged deceptive business practice under Consumer Fraud Act where gravamen of complaint was not a failure to disclose pricing information, but rather the "meet or beat" pricing policy in conjunction with variable pricing). One federal court, for example, has found that a plaintiff stated a claim under New Jersey's Act where the defendant charged disclosed parking fee "not in exchange for parking services … but instead as a contrivance … to arbitrarily inflate ticket prices." *Katz v. Live Nation, Inc.*, No. 09-3740, 2010 WL 2539686 at *6 (D.N.J. June 17, 2010) (internal quotations omitted). When construing their respective consumer protections statutes, California and New Jersey courts recognize that a literally true statement, if couched in a manner that is likely to deceive the reasonable or average consumer, is actionable. *See supra* at 20.

*McKell* played a prominent role in Plaintiffs' memorandum of law filed below. ER-50–52. But the district court ignored *McKell*, not mentioning it once in its opinion. ER-11–21. The district court instead improperly reached its own independent assessment of the contours of state law. *Cf. Erie R. Co.*, 304 U.S. at 79 (prohibiting federal courts, when

sitting in diversity, from exercising "independent judgment" when determining state law and requiring them instead to determine state law as state courts would).

The district court determined that, under the California and New Jersey statutes, the disclosure of the charge and total vehicle price precluded a finding of consumer deception. ER-18. This was error. The district court's analysis was unmoored from any state decisional law. The court should have followed—and at very least discussed—state-court decisions when determining the meaning and application of state law. *See, e.g.*, *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 524 (9th Cir. 1989) ("The task of a federal court sitting in diversity is to approximate state law.").

Furthermore, the federal case cited by the district court to support its analysis—this Court's decision in *Ebner v. Fresh, Inc.*, 838 F.3d 958 (9th Cir. 2016)—does not justify its departure from *McKell* and the like. In *Ebner*, the plaintiffs alleged that a lip-balm tube was deceptive as to its amount because it "permit[ed] only 75% of the total lip product to advance past the top of the tube," while "[a] plastic stop device prevented the remaining 25% of the product 'from being accessible … in its intended

manner or any other reasonable manner." 838 F.3d at 962. Although this Court concluded the California consumer deception claims were "not plausible" because the label disclosed "the correct weight of included lip product," this was not the end of the analysis. *Id.* at 965-66. This Court also reasoned that the challenged mechanism was "commonplace in the market" and thus understood by the reasonable consumer, who "would not simply assume that the tube contains no further product when he or she can plainly see the surface" of the remaining product. *Id.*

This case is not like *Ebner*. *Ebner* does not address the circumstances under which a charge or fee to a consumer may—or may not be—deceptive to a reasonable consumer. Nor does *Ebner* contradict the state-law principle that true statements may be actionable under state consumer-protection laws if couched in a deceptive manner. *Ebner* merely holds that, in the context of the plaintiffs' allegations and the lip-balm market, an accurate lip-balm label was not false, deceptive, or misleading. 838 F.3d at 965-66; *see also Brady*, 237 Cal. Rptr. 3d at 691 ("Literal truth can sometimes protect a product manufacturer from a mislabeling claim, but it is no guarantee.")

The bottom line is this: a disclosed charge can constitute a deceptive business practice that is actionable under the state consumer-protection laws at issue here. The district court's contrary rationale was wrong and, as explained next, "common sense" does not save it.

### 2. This is not the rare case in which "common sense" warrants dismissal as a matter of law.

In consumer deception cases, it is a "rare situation in which granting a motion to dismiss is appropriate." *Williams*, 552 F.3d at 939. This is not one of those rare situations. As explained above, Plaintiffs have plausibly alleged a deceptive business practice in accord with analogous caselaw. The district court erred by resolving the consumer-deception issue—a question of fact—at the pleadings stage, and its reliance on "common sense" to do so was misplaced.

The district court relied on its "common-sense understanding that a charge can include profit" to reject Plaintiffs' claims as a matter of law. ER-18–19. To be sure, this Court has acknowledged that consumer deception claims "may be disposed of at a motion to dismiss stage" in the rare instance in which "common sense would not lead anyone to be misled." *Moore*, 966 F.3d at 1018. But the district court's common-sense understanding of the word "charge" misses the point. Plaintiffs' point is

that, in the context of vehicle sales, common sense would suggest to a reasonable consumer that a separately listed line item labeled *Destination* Charge is related to getting a vehicle to its *destination. E.g.*, ER-107, ¶¶25-28; *accord McKell*, 49 Cal. Rptr. at 240 ("[A] reasonable consumer likely would believe that fees charged in connection with a home mortgage loan bore some correlation to services rendered."). Stated differently, it is plausible that a reasonable consumer would *not* expect an automobile manufacturer to mislabel what is essentially pure profit as a line item or pass-through charge for shipping the vehicle to its destination.

In this regard, the district court's reliance on a dictionary definition of "charge"—the "price demanded for something"—also misses the point. *See* ER-17–18 (quoting Merriam Webster's online dictionary and concluding the average consumer "would not be surprised to learn that the price of goods often includes profit for the seller"). As a case cited by the district court teaches (ER-18), a dictionary definition is relevant—if at all—only when considered in its "proper context." *Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F. 3d 1225, 1229 (9th Cir. 2019) (consumer would not reasonably believe consuming a "Diet Dr. Pepper" would lead

to weight loss simply because dictionaries defined "diet" in other contexts to include a selection of food and drinks to achieve weight loss); *see also Mitchell v. Whole Foods Mkt. Group, Inc.*, 20 Civ. 8496, 2022 WL 657044, at *8 n.14 (S.D.N.Y. Mar. 4, 2022) (rejecting a plaintiff's reliance on dictionary definitions to establish a consumer's reasonable expectations). In the context of a sale of an automobile where a separately listed line item is labeled a *Destination* Charge, a reasonable consumer would expect this charge—unlike other charges—to be based on the cost to deliver a vehicle to its *destination* and not be inflated to increase the manufacturer's profit. In short, context matters.

Moreover, Plaintiffs are not alleging "surprise" that the Manufacturer's Suggested Retail Price of the vehicles included profit. In fact, Plaintiffs have alleged the opposite: "consumers understand a lump price can include anything." ER-108, ¶32. Plaintiffs are instead alleging surprise that a line-item component of that price—the non-negotiable *Destination* Charge—was in fact unrelated to the cost of getting their vehicle to its destination, and was instead "used as a vessel for profit that would otherwise appear in the cost of the vehicle." ER-107, ¶27. A

dictionary definition of "charge" does not dispel this alleged deception as a matter of law.

A hypothetical is illustrative. Suppose General Motors had instead systematically overcharged its consumers for a "Taxes Charge," using some of the "Taxes Charge" to pay sales tax, but keeping the rest as profit for itself. Certainly, such a practice would be unfair and deceptive. *See, e.g.*, *Latman v. Costa Cruise Lines, N.V.* 758 So. 2d 699, 703 (Fla. Dist. Ct. App. 2000) ("We would not hesitate to say that an intentional overcharge of the sales tax, which is kept by the company itself, is an unfair and deceptive trade practice and that the consumer must be repaid.") It would not make any difference that the term "charge" may mean "the price demanded for something." ER-17–18. Nor would it make any difference that "the consumers clearly were willing to pay the price charged." *Latman*, 758 So. 2d at 703.

The same rationale applies here. The question is how a reasonable or average consumer would understand the line-item Destination Charge in the context of vehicle sales. It is, at the very least, plausible that a reasonable consumer would conclude the Destination Charges imposed were the entire costs General Motors incurred in getting its vehicles to

their destination. *See* § I.B.1, *supra* at 19–27; *see also Latman*, 758 at 703 (concluding the term "port charges" "necessarily constitutes a representation to a reasonable consumer that these are 'pass-through' charges which the cruise line will pay to the relevant port authorities"); *Deere Const., LLC v. Cemex Const. Materials Fla., LLC*, 198 F. Supp. 3d 1332, 1338 (S.D. Fla. 2016) (plaintiff stated consumer protection claim under state law where plaintiff alleged it did not know defendants "fuel surcharges" and "environmental charges" were "illegitimate mechanisms designed merely to contribute to [d]efendants' profits rather than address any costs [d]efendants were incurring with regard to activities falling under the descriptive terms 'fuel' or 'environmental'"). The district court's resolution of this question as a matter of law was error.

The district court also was wrong when it determined that "the allegations concerning the context of the vehicles' sales" did not matter. ER-18. In fact, that context is significant, as illustrated by the Supreme Court of New Jersey's decision in *Barry v. Arrow Pontiac, Inc.*, 494 A. 2d 804 (N.J. 1985). There, the court considered whether evidence supported an agency's finding that an automobile dealer—who advertised that its vehicles would be priced "well below dealer invoice"—had violated the

Consumer Fraud Act and its implementing regulation, which prohibited reference to the "dealer's cost or inventory price." *Barry*, 494 A. 2d at 807. The court decided that, based on the record, the term "dealer invoice" was "misleading to the average consumer."[3] *Id.* at 810.

Specifically, the court determined that "the term 'dealer invoice' has no fixed, ascertainable meaning to the average consumer." *Id.* at 71. Namely, it suffered from the same defect as "dealer's cost" or "inventory price" because "the cost as advertised is not the ultimate cost of the automobile to the dealer." *Id.* In reaching this determination, the court cited with approval the United States Supreme Court's observation that it is "commonplace that members of the public are often unaware of the technical meanings of such terms as 'fees' and 'costs'—terms that, in ordinary usage, might well be virtually interchangeable." *Id.* at 69 (quoting *Zauderer v. Office of Disciplinary Counsel of the Supreme Court*

---

[3] Of course, at this stage of the litigation, it does not matter whether Plaintiffs' allegations are supported by the evidence; it simply matters that Plaintiffs' allegations are plausible. The litigants in *Barry* had the opportunity to present evidence, which included testimony the advertisements at issue in that case were deceptive because "the consum[ing] public pays higher and they think they're getting [the] vehicle at cost when they really are not." 494 A. 2d at 809. Plaintiffs here should have this same opportunity on remand.

*of Ohio*, 471 U.S. 626, 653 (1985)). The court likewise found that, "in the context of the sale of new automobiles," in which "the average consumer … is exposed to a plethora of information relating to price and value," the "terms 'cost,' 'inventory,' and 'invoice' are equally amorphous … and equally misleading to the public." *Id*. at 71.

The Supreme Court of New Jersey's rationale in *Barry* applies here. In the context of the sale of new automobiles, the term Destination Charge can mislead a reasonable or average consumer. This is especially so given the context—a separately labeled line item. Like the "dealer invoice" price in *Barry,* a line item labeled a Destination Charge may be deceptive because the Destination Charge "as advertised is *not* the ultimate cost" of getting the vehicle to its destination as incurred by General Motors. *Cf. id.* at 812 (emphasis added). It is instead "a huge profit center" for General Motors, with "little correlation to the cost of delivering the Class Vehicles to their intended destination." ER-104, ¶6. Simply put, the district court's reliance on the technical meaning of "charge" is not determinative of whether a reasonable consumer would have been misled by General Motors' Destination Charge practice under the circumstances alleged in Plaintiffs' complaint.

***

Plaintiffs have alleged that General Motors' practice—inflating the Destination Charge with profit—is likely to deceive a reasonable consumer into thinking the non-negotiable charge bears some correlation to the cost of shipping a vehicle to its destination, when in fact it is not. ER-104, 107–08, ¶¶5, 28–31. General Motors' Destination Charge is instead inflated with profit, a fact that General Motors omitted. ER-104, 107–08, ¶¶5, 28–31. Plaintiffs are confident their allegations as to General Motors' affirmative misrepresentations and omissions ultimately are borne out by the evidence. At the early pleadings stage, it is at least *plausible* that a significant portion of vehicle consumers, acting reasonably under the circumstances, would be deceived by General Motors' practice.

For this reason, Plaintiffs have stated consumer protection claims against General Motors for: (1) its unlawful, fraudulent, and unfair business practices under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200; (2) its violations of California's Consumer Legal Remedies Act, § 1770(a)(5) and (9); and (3) its affirmative acts and knowing omissions under New Jersey's Consumer Fraud Act, N.J. Stat.

Ann. § 56:8-2. ER-113–118, ¶¶58–87. The district court's conclusion to the contrary—that, as a matter of law, no reasonable consumer could be misled by General Motors' Destination Charge practice—was wrong, and its orders of dismissal must be reversed.

### C. There is no other basis on which to affirm the district court's dismissal of Plaintiffs' state-law consumer protection claims.

The district court's dismissal was founded on its erroneous determination that, as a matter of law, General Motors' Destination Charge could not deceive a reasonable consumer. ER-16–21. Apart from its conclusion that General Motors' conduct was not deceptive, the district court did not address the additional arguments raised by General Motors below. This Court need not address these arguments; instead, it may reverse the district court's orders of dismissal and remand for the district court to consider these arguments in the first instance. *See Singleton v. Wulff*, 428 U.S. 106, 121 (1976) ("[W]hat questions may be taken up and resolved for the first time on appeal [are] left primarily to the discretion of the courts of appeals.") If the Court chooses to address these additional arguments in the first instance, none of them support the district court's dismissal of the consumer protection claims.

**1.    Plaintiffs have plausibly alleged an injury and ascertainable loss.**

Under California's consumer protection laws, a plaintiff must "demonstrate some form of economic injury" to have statutory standing to sue. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 120 Cal. Rptr. 3d 741, 246 P.3d 877, 885 (2011). Under New Jersey's Consumer Fraud Protection Act, a plaintiff must plead an "ascertainable loss." *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 748 (N.J. 2009). Article III likewise requires an "injury in fact." *See, e.g.*, *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 n.3 (9th Cir. 2013). According to the California's and New Jersey's high courts and this Court, allegations of an overcharge satisfy these requirements. *See Kwikset Corp.*, 246 P.3d at 890 (a consumer is economically harmed if the consumer "has purchased a product that he or she *paid more for* than he or she otherwise might have been willing to pay if the product had been labeled accurately"); *Bosland*, 964 A.2d at 750 (concluding an "overcharge … can be readily quantified and thus is ascertainable within the meaning of the [Consumer Fraud Act]"); *Hinojos*, 718 F.3d at 1104 n.3 ("[Plaintiffs] have suffered an Article III injury in fact" if they "paid more for a product than they otherwise would have paid, or bought it when they

36

otherwise would not have done so.") (internal quotations and alteration omitted).

Plaintiffs plausibly alleged such an overcharge: they bought vehicles they would not have otherwise purchased or leased, or would have paid less for, had they known that General Motors' Destination Charge was not related to the cost of delivering the vehicles. ER-104, 114–115, 117, ¶¶7, 61, 67, 77. This is enough to plead an economic injury or ascertainable loss. Nothing more is required. *See Kwikset*, 246 P.3d at 894–95 (no requirement to plead "a specific measure of the amount of [the alleged] loss"); *Hinojos*, 718 F.3d at 1105 (holding *Kwikset* "explicitly rejected" that a plaintiff "separately plead how much he would have paid for the merchandise had he known its true market value").

General Motors' and the district court's benefit-of-the-bargain reasoning has no place in this analysis. *See, e.g.*, ER-18 ("Plaintiffs received the vehicles they were promised at the prices they agreed upon."). Although a benefit-of-the-bargain defense may be permissible if an alleged misrepresentation is not "material," *Kwikset Corp.*, 246 P.2d at 892, that is not the case here, *infra* § I.C.2, at 38–43. This

reasoning—that a consumer suffers no economic injury if he "gets the product he expected at the price he expected"—has been "explicitly rejected" by the California Supreme Court. *Hinojos*, 718 F.3d at 1105. Regardless, consumers have not gotten the benefit of the bargain if they have been misled into overpaying for a product.

In sum, Plaintiffs' allegations that they would not have bought or leased the vehicles at the price they paid but for General Motors' affirmative misrepresentations and omissions are sufficient to demonstrate an injury or loss and to survive a motion to dismiss.

> ### 2. Plaintiffs have plausibly alleged an omission of material fact and facts giving rise to a duty to disclose.

Omissions of material fact are actionable under California's and New Jersey's consumer protection laws. *Gutierrez*, 248 Cal. Rptr. 3d at 84; N.J. Stat. Ann. § 56:8-2 (prohibiting a "knowing … omission of any material fact"). A fact is material "if a reasonable consumer would deem it important in determining how to act in the transaction at issue." *Gutierrez*, 248 Cal. Rptr. 3d at 84; *accord Suarez v. E. Int'l Coll.*, 50 A.3d 75, 89 (N.J. Sup. Ct. App. Div. 2012). The issue of materiality is "typically an issue of fact" that "should not be decided at the motion to dismiss

stage." *Hinojos*, 718 F.3d at 1107 n.7; *see Gutierrez*, 248 Cal. Rptr. 3d at 87 (declining to find at the pleadings stage that the omission of information was "so obviously unimportant" that the jury could not find that "a reasonable person would have been influence[d] by it").

General Motors' misrepresentations and omissions regarding its Destination Charge are not so obviously unimportant as to be immaterial as a matter of law. As New Jersey's high court has recognized, "the purchase of an automobile represents a significant investment for most people," and the average consumer "is exposed to a plethora of information relating to price and value." *Barry*, 494 A. 2d at 812; *see also Hinojos*, 718 F.3d at 1197 ("[P]rice advertisements matter."). At the very least, it is plausible that a reasonable consumer would deem it important to know that General Motors' Destination Charge is inflated with profit, as this could affect the consumer's purchase or lease decision. ER-103–104, 114–115, ¶¶2, 5, 7, 61–62, 67*; cf. Hinojos*, 718 F.3d at 1106 ("Misinformation about a product's 'normal' price is … significant to many consumers in the same way a false product label would be.").

Plaintiffs' allegations regarding a material omission also give rise to a duty to disclose under state law. A failure to disclose a material fact

is actionable under California's consumer protection laws if, as relevant here, "the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff" or "the defendant actively conceals a material fact from the plaintiff." *Collins v. eMachines, Inc.*, 202 Cal. App.4th 249, 255 (2011). In this case, Plaintiffs plausibly alleged that General Motors has exclusive knowledge of "what it costs to ship vehicles to their 'destination,'" and that it actively conceals from consumers the fact that it is inflating its Destination Charge with profit. *E.g.*, ER-105–106, 108–110, 117, ¶¶15, 21, 31, 37, 39, 41, 79. At this stage of the litigation, such allegations are sufficient to proceed beyond the pleadings stage.

The duty to disclose under California law is not limited to safety issues or those affecting functionality, as General Motors argued below. General Motors relied on *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012), where this Court interpreted California law to require a plaintiff—in a case alleging concealment of a design defect manifesting after the warranty expired—to plead that the undisclosed information created a safety hazard. As this Court has recognized, however, "recent state-court cases have cast doubt on whether *Wilson*'s

safety-hazard requirement applies in all circumstances." *Hodson v. Mars, Inc.*, 891 F. 3d 857, 862 (9th Cir. 2018) (discussing *Collins*, 134 Cal. Rptr. 3d at 593, and *Rutledge v. Hewlett-Packard Co.*, 238 Cal. App. 4th 1164, 190 Cal. Rptr. 3d 411 (2015)); *see also Gutierrez*, 248 Cal. Rptr. 3d at 84 (explaining that "the disclosure of safety concerns" is not "an independent duty," but rather "a specific application of the duty to disclose"). Certainly, it does not apply here, where neither a product defect nor a warranty is at issue.

This Court's decision in *Hodson* concerning the "central function" of a product is also not dispositive. Although *Hodson* did not concern a warranty or product defect, the California authorities on which it relied did. *See* 891 F.3d at 862-63 (discussing *Collins* and *Rutledge*). In addition to limiting *Wilson*, this Court in *Hodson* held that "in [a] pure omissions case concerning no physical product defect relating to the central function of the chocolate and no safety defect, Plaintiff has not sufficiently pleaded that [the defendant] had a duty to disclose on its labels the labor issues in its supply chain." 891 F.3d at 865. Unlike *Hodson*, however, this is not a "pure omissions case." *Id.* Plaintiffs have also alleged an affirmative misrepresentation by General Motors—*i.e.*, that its term Destination

Charge did not accurately describe what was being charged—that is contrary to General Motors' omission of the fact that its Destination Charge is inflated with profit. *See Hodson*, 891 F.3d at 861 (an omission is actionable under California's consumer protection laws if it is "contrary to a representation actually made by the defendant, or *omission of a fact the defendant was obliged to disclose*").

The Automobile Information Disclosure Act, 15 U.S.C. § 1232, is likewise irrelevant. General Motors' duty to disclose is grounded in state law, not federal law. General Motors' disclosure of the true nature of its Destination Charge—that it is inflated with profit—would not be inconsistent or at odds with any disclosure required by the federal Act. *See* 15 U.S.C. § 1232(f) (requiring manufacturer to disclose, among other things, "the amount charged, if any, to such dealer for the transportation of such automobile to the location at which it is delivered to such dealer"). The federal Act does not require manufacturers to charge destination fees, nor does it authorize manufacturers to charge fees that mislead a consumer to believe he is paying for transportation costs rather than the manufacturer's profit. The federal Act merely requires the *disclosure* of the amount charged for any fees. *See id.*

42

In sum, Plaintiffs plausibly pleaded facts giving rise to a duty to disclose under state law, and they are entitled to proceed beyond the pleadings stage on this basis.

### 3. Plaintiffs have plausibly alleged actual reliance and causation.

Under California's consumer-protection laws, a "plaintiff proceeding on a claim of misrepresentation … must demonstrate actual reliance on the allegedly deceptive or misleading statements." *Kwikset Corp.*, 246 P.3d at 888 (internal quotations omitted). Actual reliance requires the plaintiff to "show that the misrepresentation was an immediate cause of the injury-producing conduct," although a "plaintiff is not required to allege that [the challenged] misrepresentations were the sole or even decisive cause of the injury-producing conduct." *Id.*

Actual reliance can be "inferred from the misrepresentation of a material fact." *Chapman v. Skype, Inc.*, 220 Cal. App. 4th 217, 162 Cal. Rptr. 3d 864, 871 (2013); *accord Friedman v. AARP, Inc.*, 855 F.3d 1047, 1055 (9th Cir. 2017) (applying California law). Likewise, where an omission is alleged, a plaintiff may prove actual reliance "by simply proving 'that, had the omitted information been disclosed, one would have been aware of it and behaved differently," which "can be presumed,

or at least inferred, when the omission is material." *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015). New Jersey's Consumer Fraud Act does not require a plaintiff to plead actual reliance, but it does require "a causal connection between the defendant's unlawful conduct and the plaintiff's ascertainable loss." *Int'l Union of Operating Eng'r*, 929 A.2d at 1086.

Plaintiffs have alleged that they would have paid less for the vehicles had they known that the Destination Charge included profit. ER-106–107, ¶¶17, 23. Plaintiffs have further alleged that General Motors' misrepresentations and omission were material. *Id.* As such, it is plausible to infer that the affirmative misrepresentations and omissions regarding General Motors' Destination Charge impacted Plaintiffs' purchasing decision, and that Plaintiffs, who have alleged that they viewed the vehicles Monroney sticker before purchase, would have been aware of the omitted information had it been disclosed. ER-103, 105–07, 117, ¶¶2, 13–17, 19–23, 77. Stated differently, Plaintiffs have sufficiently pled a causal connection between General Motors' misrepresentations and omissions and an ascertainable loss—the overpayment for their

vehicle—and they are entitled to proceed beyond the pleadings stage on their consumer-protection claims.

### 4. Plaintiffs may pursue their equitable claims at this early stage of the litigation.

A plaintiff generally may recover injunctive relief and restitution in a suit under California's Unfair Competition Law. *See Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 950, 119 Cal. Rptr. 2d 296, 304 (2002). Injunctive relief is likewise available under California's Consumer Legal Remedies Act. Cal. Civ. Code § 1780(a)(2).

Plaintiffs have adequately pled entitlement to equitable remedies, including injunctive relief and restitution. ER-114–116, ¶¶63, 68-70. Although General Motors argued below that equitable relief is inappropriate because Plaintiffs have an adequate remedy at law, legal remedies alone are insufficient to protect Plaintiffs and class members from future harm because, as alleged, General Motors continues to engage in its Destination Charge practice to this day. *E.g.,* ER-109, 115, ¶¶37, 39, 66, 68. Regardless, even assuming *arguendo* that Plaintiffs have an adequate remedy at law, Federal Rule of Civil Procedure 8 plainly permits litigants to plead "relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a)(3).  Plaintiffs may pursue theories of

recovery on both legal and equitable grounds at this early stage of the litigation.

*Sonner v. Premier Nutrition Corp.*, does not alter this fundamental principle of federal pleadings. 971 F.3d 834 (9th Cir. 2020). In *Sonner*, the plaintiff "voluntarily dismissed her sole state law damages claim and chose to proceed with only state law equitable claims" on "the brink of trial after more than four years of litigation." *Id.* at 837. The plaintiff did so for a "singular and strategic purpose": "to try the class action as a bench trial rather than to a jury." *Id.* After the plaintiff dropped her damages claim, the district court granted the defendant's motion to dismiss the equitable claims for restitution and entered judgment in favor of the defendant. *Id.* at 838.

This Court affirmed. *Id.* at 845. It held that "a federal court must apply traditional equitable principles before awarding restitution under the [Unfair Competition Law] and [Consumer Legal Remedies Act],'" including "the requisite inadequacy of legal remedies." *Id.* at 841, 844. Applying those principles, this Court further held that a plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the [Unfair Competition Law]

and [Consumer Legal Remedies Act]." *Id.* at 844. Because the plaintiff had failed to make such a showing in *Sonner*, this Court affirmed the dismissal of her claims for restitution. *Id.*

*Sonner* is distinguishable from this case. Unlike *Sonner*, in which the case had proceeded to the brink of trial, *id.* at 837, this case is in its infancy, ER-124–126. Unlike *Sonner*, in which the plaintiff had dismissed her state-law damages claims, 971 F.3d at 838, Plaintiffs are not pursuing equitable remedies to the exclusion of a remedy at law, ER-36–37. And unlike *Sonner*, in which "[i]njunctive relief [was] not at issue," 971 F.3d at 842, Plaintiffs are seeking a prospective injunction in addition to other relief, ER-115-16, ¶¶68–70. *Sonner* teaches that a plaintiff cannot create an inadequacy of legal remedies by voluntarily dismissing her claims on the brink of trial. But nothing in *Sonner* compels the dismissal of Plaintiffs' equitable claims at this early stage of the litigation.

### 5. Plaintiffs' allegations satisfy Rule 9(b).

General Motors referenced Rule 9(b)'s heightened pleading standard in its motion to dismiss, but did not argue that Plaintiffs failed to satisfy it, or even that it applied to Plaintiffs' claims. Likewise, the

district court referenced Rule 9(b) in its order but did not apply it. ER-15. Even assuming *arguendo* that Rule 9(b) applies to Plaintiffs' claims, Plaintiffs have satisfied it.

As this Court has observed, "fraud is not an essential element of" California's consumer-protection statutes. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). Nevertheless, Rule 9(b) requires that "in all averments of fraud …, the circumstances constituting fraud … shall be stated with particularity." Fed. R. Civ. P. 9(b). As such, "[a]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess*, 317 F.3d at 1106 (internal quotation marks omitted).

Rule 9(b) "may be relaxed as to matters within the opposing party's knowledge." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). In this regard, the rule only "requires that plaintiffs specifically plead those facts surrounding alleged acts of fraud to which they can reasonably be expected to have access." *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995). Thus, a "pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that a

defendant can prepare an adequate answer from the allegations." *Moore*, 885 F.2d at 540.

Plaintiffs have satisfied Rule 9(b)'s particularity requirement here. Plaintiff Robert Romoff has alleged that he viewed the Destination Charge prior to his purchase of a new 2021 Chevrolet Equinox at Quality Chevrolet in San Diego, California (the "When" and "Where"), and Plaintiff Joe Siciliano has alleged that he viewed the Destination Charge prior to his purchase of a new 2019 Cadillac Escalade at Callaremi Cadillac in Hackettstown, New Jersey (the "When" and "Where"). ER-105–106, ¶¶12–13, 18–19. Plaintiffs further allege that General Motors (the "Who"), through its Destination-Charge misrepresentations and omissions (the "What"), misled Plaintiffs and other consumers into believing that the non-negotiable Destination Charge represented General Motors' cost to deliver their vehicles to their destination (the "How"). ER-105-07, ¶¶13–23. Plaintiffs have pled all facts to which they can "reasonably be expected to have access," *Concha* 62 F.3d at 1503, and have therefore satisfied Rule 9(b) to the extent it applies.

\*\*\*

49

The district court got it wrong: Plaintiffs have plausibly alleged that reasonable consumers are likely to be deceived by General Motors' Destination Charge practice. The district court's dismissal hinges on its erroneous conclusion to the contrary, and there is no other basis on which to affirm. This Court must reverse.

## II. The district court erred in dismissing Plaintiffs' unjust enrichment claims for the same reasons it erred in dismissing Plaintiffs' consumer-protection claims.

The district court dismissed Plaintiffs' unjust enrichment claims based on its conclusion that Plaintiffs' complaint "fails to adequately allege facts to support an inference that [General Motors]' conduct is deceptive." ER-20. This was error for the reasons argued above. *See* § I.B, *supra* at 19–35.

The district court did not address General Motors' argument below that Plaintiffs' unjust enrichment claims were subject to dismissal because they have an adequate remedy at law. This argument is also wrong for the reasons argued above. *See* § I.C.4, *supra* at 45–48. Thus, if this Court reverses the dismissal of Plaintiffs' state-law consumer protection claims, it should likewise reverse the dismissal of Plaintiffs' unjust enrichment claims.

## CONCLUSION

This Court should reverse the district court's orders of dismissal and remand for further proceedings consistent with the legal principles stated herein. Alternatively, if the Court concludes that only some of the claims pled were plausible under California or New Jersey law, then it should reverse the district court's orders insofar as they dismissed the plausible claims and remand for further proceedings consistent with the applicable legal principles stated herein.

CREED & GOWDY, P.A.

/s/ *Bryan S. Gowdy*

**Bryan S. Gowdy**
Florida Bar No. 0176631
bgowdy@appellate-firm.com
filings@appellate-firm.com
865 May Street
Jacksonville, Florida 32204
Telephone: (904) 350-0075
*Counsel for Plaintiffs-Appellants*

## STATEMENT OF RELATED CASES

**9th Cir. Case Number 22-55170**

The undersigned attorney or self-represented party states the following:

[ ] I am unaware of any related cases currently pending in this court.

[ X ] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[ ] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

By: */s/ Bryan S. Gowdy*

## CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY that this brief complies with the type-volume limitation of Rule 32(a)(7)(B), Federal Rules of Appellate Procedure, and 9th Cir. Rule 32-1(a) in that it contains 10,031 words (including words in footnotes), excluding the parts of the document exempted by Fed. R. App. P. 32(f), according to the word-processing system used to prepare this brief. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook.

By: */s/ Bryan S. Gowdy*

## CERTIFICATE OF SERVICE

I HERBY CERTIFY that on May 16, 2022, I electronically filed the foregoing brief with the Clerk of Court of the U.S. Court of Appeals for the Ninth Circuit using the CM/ECF system. All participants are registered and will be served by the CM/ECF system.

By: */s/ Bryan S. Gowdy*

## <u>ADDENDUM TABLE OF CONTENTS</u>

| Document | Page No. |
|---|---|
| Cal. Bus. & Prof. Code § 17200 | ADD-2 |
| Cal. Civ. Code § 1760 | ADD-2 |
| Cal. Civ. Code § 1770(a)(5), (9) (excerpts) | ADD-3 |
| N.J. Stat. Ann. 56:8-2 | ADD-4 |
| 15 U.S.C. § 1232 | ADD-5 |

## Cal. Bus. & Prof. Code § 17200

Business and Professions Code

Division 7. General Business Regulations

Part 2. Preservation and Regulation of Competition

Chapter 5. Enforcement

### § 17200. Unfair competition; prohibited activities

As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code.

## Cal. Civ. Code § 1760

Civil Code

Division 3. Obligations

Part 4. Obligations Arising from Particular Transactions

Title 1.5 Consumers Legal Remedies Act

Chapter 2. Construction and Definitions

### § 1760. Construction and application

This title shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection.

# Cal. Civ. Code § 1770

Civil Code
Division 3. Obligations
Part 4. Obligations Arising from Particular Transactions
Title 1.5 Consumers Legal Remedies Act
Chapter 3. Deceptive Practices

## § 1770. List of proscribed practices

**(a) The unfair methods of competition and unfair or deceptive acts or practices listed in this subdivision undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer are unlawful:**

**\* \* \***

(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have.

**\* \* \***

(9) Advertising goods or services with intent not to sell them as advertised.

**\* \* \***

**N.J. Stat. Ann. 56:8-2**

New Jersey Statutes Annotated

Title 56. Trade Names, Trade-Marks and Unfair Trade Practices

Chapter 8. Frauds, Etc., in Sales or Advertisements of Merchandise

## 56:8-2. Fraud, etc., in connection with sale or advertisement of merchandise or real estate as unlawful practice

The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice; provided, however, that nothing herein contained shall apply to the owner or publisher of newspapers, magazines, publications or printed matter wherein such advertisement appears, or to the owner or operator of a radio or television station which disseminates such advertisement when the owner, publisher, or operator has no knowledge of the intent, design or purpose of the advertiser.

## 15 U.S.C. § 1232

United States Code

Title 15. Commerce and Trade

Chapter 28. Disclosure of Automobile Information

## § 1232. Label and entry requirements

Every manufacturer of new automobiles distributed in commerce shall, prior to the delivery of any new automobile to any dealer, or at or prior to the introduction date of new models delivered to a dealer prior to such introduction date, securely affix to the windshield, or side window of such automobile a label on which such manufacturer shall endorse clearly, distinctly and legibly true and correct entries disclosing the following information concerning such automobile--

**(a)** the make, model, and serial or identification number or numbers;

**(b)** the final assembly point;

**(c)** the name, and the location of the place of business, of the dealer to whom it is to be delivered;

**(d)** the name of the city or town at which it is to be delivered to such dealer;

**(e)** the method of transportation used in making delivery of such automobile, if driven or towed from final assembly point to place of delivery;

**(f)** the following information:

    **(1)** the retail price of such automobile suggested by the manufacturer;

    **(2)** the retail delivered price suggested by the manufacturer for each accessory or item of optional equipment, physically attached to such automobile at the time of its delivery to such dealer, which is not included within the price of such automobile as stated pursuant to paragraph (1);

**(3)** the amount charged, if any, to such dealer for the transportation of such automobile to the location at which it is delivered to such dealer; and

**(4)** the total of the amounts specified pursuant to paragraphs (1), (2), and (3);

**(g)** if one or more safety ratings for such automobile have been assigned and formally published or released by the National Highway Traffic Safety Administration under the New Car Assessment Program, information about safety ratings that--

**(1)** includes a graphic depiction of the number of stars, or other applicable rating, that corresponds to each such assigned safety rating displayed in a clearly differentiated fashion indicating the maximum possible safety rating;

**(2)** refers to safety rating categories that may include frontal impact crash tests, side impact crash tests, and rollover resistance tests (whether or not such automobile has been assigned a safety rating for such tests);

**(3)** contains information describing the nature and meaning of the crash test data presented and a reference to additional vehicle safety resources, including http://www.safecar.gov; 1 and

**(4)** is presented in a legible, visible, and prominent fashion and covers at least--

**(A)** 8 percent of the total area of the label; or

**(B)** an area with a minimum length of 4 ½ inches and a minimum height of 3 ½ inches; and

**(h)** if an automobile has not been tested by the National Highway Traffic Safety Administration under the New Car Assessment Program, or safety ratings for such automobile have not been assigned in one or more rating categories, a statement to that effect.