# No. 22-55170

### In The
## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

**ROBERT ROMOFF and JOE SICILIANO,**
on behalf of themselves and all others similarly situated,
*Plaintiffs—Appellants,*

*v.*

## GENERAL MOTORS LLC,

*Defendant—Appellee.*

On Appeal From the United States District Court
for the Southern District of California,
Hon. William Q. Hayes, District Judge, Case No. 2:21-cv-938-WQH-BGS

## GENERAL MOTORS LLC'S ANSWERING BRIEF

**DYKEMA GOSSETT LLP**
**JAMES S. AZADIAN**
**DEREK S. WHITEFIELD**
333 South Grand Avenue, Suite 2100
Los Angeles, California 90071
(213) 457-1800 • Facsimile: (213) 457-1850
jazadian@dykema.com • dwhitefield@dykema.com

**Attorneys for Appellee**
General Motors LLC

## CORPORATE DISCLOSURE STATEMENT

Under Federal Rule of Appellate Procedure 26.1, Appellee General Motors LLC states that it is wholly owned by General Motors Holdings LLC, which is wholly owned by General Motors Company, which is publicly traded.

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

CORPORATE DISCLOSURE STATEMENT ............................................. 1

INTRODUCTION ........................................................................... 9

ISSUES PRESENTED ................................................................... 12

STATEMENT OF JURISDICTION .................................................. 12

STATEMENT OF THE CASE ......................................................... 12

A.   For more than 60 years, the AIDA has required
     automotive manufacturers to separately list the
     destination charge as one of three line-item charges that
     make up a new vehicle's total sticker price .................................. 12

B.   Plaintiffs each purchased a new vehicle after reviewing
     the window sticker and with the expectation that the
     price of the vehicle would include profit for GM. But
     then they sued GM on the theory that they unknowingly
     overpaid because the sticker's listed destination charge
     allegedly included profit .................................................. 14

C.   The district court dismissed Plaintiffs' claims, holding
     that whether the destination charge includes profit is
     not deceptive, and therefore is not fraudulent, unlawful,
     unfair, or unjust under California or New Jersey law ................. 17

SUMMARY OF ARGUMENT ......................................................... 19

STANDARD OF REVIEW ............................................................. 23

ARGUMENT ................................................................................ 23

A.   The district court correctly dismissed Plaintiffs'
     misrepresentation and omission claims under the UCL,
     CLRA, and NJCFA because a reasonable or average
     consumer would understand that the destination
     charge, as part of the vehicle's total listed sticker price,
     may include profit .......................................................... 23

1.  The district court correctly held that Plaintiffs failed to allege an actionable misrepresentation because the term "destination charge," which is merely part of the vehicle's total listed sticker price, does not plausibly infer the absence of any profit ............................................................... 24

2.  The district court correctly held that Plaintiffs failed to allege an actionable omission because a disclosure that the destination charge includes profit would be immaterial to a reasonable or average consumer ............................................... 31

3.  The California Court of Appeal's decision in *McKell* is factually and legally distinguishable, and is limited to only one of Plaintiffs' claims ..................... 35

B.  Plaintiffs do not challenge the district court's determination that in the absence of any alleged predicate fraudulent act or statutory violation, Plaintiff Romoff's claims of unfairness and unlawfulness under the UCL, as well as Plaintiffs' unjust enrichment claims must be dismissed ........................................... 46

C.  The district court's order may be affirmed on alternative, independent grounds that the district court did not address ........................................................ 47

1.  Plaintiffs failed to plausibly allege any actual damages on their UCL, CLRA, and NJCFA claims ............ 47

2.  Plaintiffs failed to allege the absence of adequate legal remedies on their equitable claims ............................ 51

CONCLUSION ........................................................................ 56

STATEMENT OF RELATED CASES .................................... 57

CERTIFICATE OF COMPLIANCE ....................................... 58

# TABLE OF AUTHORITIES

CASES                  PAGE(S)

*Al-Nashiri v. Macdonald,*
 741 F.3d 1002 (9th Cir. 2013) ............................................................. 27

*Aron v. U-Haul of Calif.,*
 143 Cal. App. 4th 796 (2006) ............................................................. 41

*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009) .................................................... 22, 26, 42, 43, 44

*Astiana v. Hain Celestial Grp., Inc.,*
 783 F.3d 753 (9th Cir. 2015) ............................................................. 52

*Barry v. Arrow Pontiac, Inc.,*
 494 A.2d 804 (N.J. 1985) ...................................................... 33, 44, 45

*Becerra v. Dr. Pepper / Seven-Up, Inc.,*
 945 F.3d 1225 (9th Cir. 2019) ...................................................... 24, 25

*Berryman v. Merit Prop. Mgmt., Inc.,*
 152 Cal. App. 4th 1544 (2007) .................................................... 40, 42

*Bosland v. Warnock Dodge, Inc.,*
 964 A.2d 741 (N.J. 2009) ............................................................ 49, 50

*Brady v. Bayer Corp.,*
 26 Cal. App. 5th 1156 (2018) ............................................................ 22

*Cimoli v. Alacer Corp.,*
 546 F. Supp. 3d 897 (N.D. Cal. 2021) ............................................... 55

*Cox v. Sears Roebuck & Co.,*
 647 A.2d 454 (N.J. 1994) .................................................................. 24

*Cypress Point Condo Ass'n v. Adria Towers, L.L.C.,*
 143 A.3d 273 (N.J. 2016) .................................................................. 25

*Daniel v. Ford Motor Co.,*
 806 F.3d 1217 (9th Cir. 2015) ........................................................... 31

*Durell v. Sharp Healthcare,*
183 Cal. App. 4th 1350 (2010) ............................................................ 47

*DW Aina Le'a Dev., LLC v. Haw. Land Use Comm'n,*
918 F.3d 602 (9th Cir. 2019) .............................................................. 36

*Ebner v. Fresh, Inc.,*
838 F.3d 958 (9th Cir. 2016) .............................................................. 23

*Graham v. VCA Antech, Inc.,*
2:14-cv-08614-CAS-JC,
2016 U.S. Dist. LEXIS 145778
(C.D. Cal. Sept. 12, 2016) .......................................................... 40, 41

*Graham v. VCA Animal Hosps., Inc.,*
729 Fed. Appx. 537 (9th Cir. 2018) ............................................ 40, 41

*Guaranty Trust Co. v. York,*
326 U.S. 99 (1945) .............................................................................. 54

*Hacker v. Homeward Residential, Inc.,*
23 Cal. App. 5th 111 (2018) ............................................................... 43

*Hansen v. Dep't of Treasury,*
528 F.3d 597 (9th Cir. 2007) .............................................................. 47

*Hassler v. Sovereign Bank,*
644 F. Supp. 2d 509 (D. N.J. 2019) ................................................... 25

*Hinojos v. Kohl's Corp.,*
718 F.3d 1098 (9th Cir. 2013) ...................................................... 32, 50

*Hodsdon v. Mars, Inc.,*
891 F.3d 857 (9th Cir. 2018) .............................................................. 31

*In re Van Holt,*
163 F.3d 161 (3d Cir. 1998) ............................................................... 24

*Kasky v. Nike, Inc.,*
27 Cal. 4th 939 (2002) ........................................................................ 51

*Keller v. Elec. Arts Inc.*,
724 F.3d 1268 (9th Cir. 2013) ............................................................. 35

*Ketayi v. Health Enrollment Grp.*,
20-cv-1198-GPC-KSC,
2021 U.S. Dist. LEXIS 127597
(S.D. Cal. July 8, 2021) ........................................................................ 55

*Kwikset Corp. v. Superior Court*,
246 P.3d 877 (Cal. 2011) ............................................................. 47, 50

*Leon v. Rite Aid Corp.*,
774 A.2d 674 (N.J. Super. Ct. App. Div. 2001) .................................. 45

*McCann v. Lucky Money, Inc.*,
129 Cal. App. 4th 1382 (2005) ............................................. 21, 39, 42

*McGlothlen v. Dep't of Motor Vehicles*,
71 Cal. App. 3d 1005 (1977) ............................................................... 35

*McKell v. Washington Mut., Inc.*,
142 Cal. App. 4th 1457 (2006) ......................... 21, 36, 37, 42, 43, 44, 45

*Moore v. Mars Petcare US, Inc.*,
966 F.3d 1007 (9th Cir. 2020) ......................................... 22, 25, 26, 42

*Moore v. Trader Joe's Co.*,
4 F.4th 874 (9th Cir. 2021) ................................................................. 25

*Muniz v. UPS*,
738 F.3d 214 (9th Cir. 2013) ............................................................... 35

*Ortiz v. Goya Foods, Inc.*,
Civil Action No. 19-19003 (SRC),
2020 U.S. Dist. LEXIS 58854
(D. N.J. Apr. 3, 2020) .................................................................... 52, 55

*People v. Dollar Rent-A-Car Sys.*,
211 Cal. App. 3d 119 (1989) ............................................................... 41

*Peters v. U.S. HUD*,
    Civil No. 04:06057 (RBK),
    2006 U.S. Dist. LEXIS 4727
    (D. N.J. Feb. 1, 2006) ........................................................................ 31

*Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*,
    522 F.3d 1049 (9th Cir. 2008) ......................................................... 23

*Rojas-Lozano v. Google, Inc.*,
    159 F. Supp. 3d 1101 (N.D. Cal. 2016) ............................................ 48

*Searle v. Wyndham Int'l*,
    102 Cal. App. 4th 1327 (2002) ................................................... 40, 42

*Sharma v. Volkswagen AG*,
    524 F. Supp. 3d 891 (N.D. Cal. 2021) .............................................. 53

*Shay v. Apple Inc.*,
    Case No. 20cv1629-GPC(BLM),
    2021 U.S. Dist. LEXIS 84415
    (S.D. Cal. May 3, 2021) ............................................................. 53, 54

*Shvarts v. Budget Grp., Inc.*,
    81 Cal. App. 4th 1153 (2000) ........................................ 21, 38, 39, 42

*Smith v. Marsh*,
    194 F.3d 1045 (9th Cir. 1999) ..................................................... 46, 47

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ........................................ 51, 52, 53, 54

*Thiedemann v. Mercedes-Benz USA*,
    LLC, 872 A.2d 783 (N.J. 2005) ........................................................ 47

*Tompkins v. 23andMe, Inc.*,
    834 F.3d 1019 (9th Cir. 2016) ..................................................... 36, 38

*Turf Lawnmower Repair, Inc. v. Bergen Record Corp.*,
    655 A.2d 417 (N.J. 1995) ................................................................. 24

*Wayne v. Staples, Inc.*,
    135 Cal. App. 4th 466 (2006) ........................................... 21, 39, 40, 42

*Williamson v. Gen. Dynamics Corp.*,
    208 F.3d 1144 (9th Cir. 2000) ....................................................... 47

*Zebersky v. Bed Bath & Beyond, Inc.*,
    Civil Action No. 06-cv-1735 (PGS),
    2006 U.S. Dist. LEXIS 86451
    (D. N.J. Nov. 28, 2006) ............................................................. 48

## RULES

9th Cir. Rule 28-2.2 ................................................................... 12

Fed. R. App. P. 4(a)(1)(A) ......................................................... 12

Fed. R. Civ. P. 8(a)(3) ........................................................ 52, 53

Fed. R. Civ. P. 12(b)(6) ............................................................. 17

## STATUTES

15 U.S.C. § 1231 ........................................................................ 9

15 U.S.C. § 1232 ................................................................... 9, 12

15 U.S.C. § 1232(f) .............................................................. 13, 28

15 U.S.C. § 1232(f)(3) .......................................................... 20, 26

15 U.S.C. § 1233 ........................................................................ 9

28 U.S.C. § 1291 ...................................................................... 12

Cal Bus. & Prof. Code § 17200 ................................................. 16

Cal Civ. Code § 1750. ............................................................... 15

N.J. Stat. Ann. § 56:8-2 ...................................................... 16, 31

# INTRODUCTION

Generations of consumers are familiar with the window sticker required by the Automobile Information Disclosure Act ("AIDA"), 15 U.S.C. §§ 1231–1233, to appear on every new vehicle offered for sale. The sticker prominently discloses the manufacturer's asking price, thereby allowing consumers to readily compare the prices of various makes and models. The AIDA requires automotive manufacturers to list three line-item charges: the Manufacturer Suggested Retail Price ("MSRP"); the charge for optional or accessory equipment; and the amount the manufacturer has charged the dealer for transporting the vehicle to the dealer's lot, which Plaintiffs call the "destination charge." The sum of these three line-item charges equals the manufacturer's total asking price for the vehicle, which the AIDA also requires to be listed on the window sticker and is commonly called the vehicle's "sticker price." Consumers can choose to pay the sticker price, reject it, or negotiate the final sales price with the dealer, as commonly occurs.

Plaintiffs concede that their GM vehicles had the AIDA-required window sticker and that they reviewed the window sticker before purchase. Plaintiffs concede that they received the vehicles they wanted

9

at the prices they agreed to pay. And Plaintiffs concede the commonsense fact that a reasonable consumer would expect the price of a vehicle to include profit for the manufacturer. Plaintiffs nevertheless allege that they were deceived into overpaying for their vehicles because GM did not disclose that the destination charge allegedly includes profit.

But Plaintiffs' claims suffer from a fundamental flaw: the destination charge is one of three line-item charges that make up the vehicle's total sticker price, which, as Plaintiffs concede, a reasonable consumer would expect to include profit. So any profit in the destination charge is immaterial as a matter of law. It makes no difference whether profit is included in the MSRP, the optional equipment charge, the destination charge, or all three. Whatever profit is included in one, two, or all three line-item charges is simply part of the total sticker price that a consumer can choose to accept, reject, or negotiate. As the district court correctly concluded when dismissing their complaint, it is implausible that Plaintiffs were deceived into overpaying for their vehicles.

Plaintiffs expose the fallacy of their theory by asserting that, instead of separately disclosing the destination charge as its own line item on the window sticker, what GM should have done is add that

charge to the MSRP and thus not expressly disclose it. But doing so would have violated the AIDA. It also would have merely deleted one line-item charge (the destination charge) from the window sticker while increasing another line-item charge (the MSRP), and therefore would not have resulted in any change to the total sticker price or the express disclosure of any profit included in that price.

Plaintiffs criticize the district court for using common sense in rejecting their claims. But the Supreme Court has instructed district courts to use common sense when determining whether a plaintiff has stated a plausible claim for relief. And this Court has held that courts should exercise common sense when determining whether a plaintiff has stated a plausible claim of deception. Here, the district court held that a reasonable or average consumer would understand the commonsense fact that the "destination charge" may include profit, just like any other charge that makes up a vehicle's sticker price. Nevertheless, the district court gave Plaintiffs the opportunity to amend their complaint. Plaintiffs forfeited that opportunity and directly appealed.

This Court should affirm the dismissal of the complaint.

## ISSUES PRESENTED

1. Whether the district court correctly dismissed Plaintiffs' claims because a reasonable or average consumer would understand the commonsense fact that the "destination charge," as part of the vehicle's total listed sticker price, may include profit.

2. Whether the dismissal of Plaintiffs' claims should be affirmed on the alternative and independent grounds that Plaintiffs failed to allege actual damages or the inadequacy of legal remedies.

## STATEMENT OF JURISDICTION

GM agrees with Plaintiffs' jurisdictional statement. *See* 28 U.S.C. § 1291; Fed. R. App. P. 4(a)(1)(A); 9th Cir. Rule 28-2.2.

## STATEMENT OF THE CASE

**A. For more than 60 years, the AIDA has required automotive manufacturers to separately list the destination charge as one of three line-item charges that make up a new vehicle's total sticker price.**

The AIDA was enacted in 1958 and requires automobile manufacturers to affix a label to the windshield or side window of every new automobile offered for sale. *See* 15 U.S.C. § 1232. The window sticker—also known as the "Monroney label," named after the Oklahoma

senator who was the legislation's chief sponsor—must contain three line-item charges, as well as the sum of those line-item charges:

> (1) the retail price of such automobile suggested by the manufacturer;
>
> (2) the retail delivered price suggested by the manufacturer for each accessory or item of optional equipment, physically attached to such automobile at the time of its delivery to such dealer, which is not included within the price of such automobile as stated pursuant to paragraph (1);
>
> (3) the amount charged, if any, to such dealer for the transportation of such automobile to the location at which it is delivered to such dealer; and
>
> (4) the total of the amounts specified pursuant to paragraphs (1), (2), and (3).

*Id.* § 1232(f).

Plaintiffs allege that each GM vehicle displayed the AIDA-mandated window sticker. ER-13; ER-105 (¶ 13); ER-106 (¶ 19). Each window sticker separately listed the destination charge required by the AIDA. *Id.*

**B.  Plaintiffs each purchased a new vehicle after reviewing the window sticker and with the expectation that the price of the vehicle would include profit for GM. But then they sued GM on the theory that they unknowingly overpaid because the sticker's listed destination charge allegedly included profit.**

Plaintiff Robert Romoff alleges that he bought a new 2021 Chevrolet Equinox at a dealership in California, and Plaintiff Joe Siciliano alleges that he bought a new 2019 Cadillac Escalade at a dealership in New Jersey. ER-105 (¶ 12); ER-106 (¶ 18). Before buying the GM vehicles, both reviewed the window sticker, which included the vehicle's destination charge. ER-105 (¶ 13); ER-106 (¶ 19).

Plaintiffs later sued GM on the theory that they had overpaid for their vehicles and were deprived of the ability to negotiate a lower vehicle price because the destination charge allegedly includes profit, which they allegedly did not know at the time of purchase. ER-106 (¶¶ 17, 23). In their complaint, Plaintiffs allege that "GM's price stickers break out the Destination Charge separate and apart from the base MSRP and include it as an add-on." ER-107 (¶ 27). Separately listing the destination charge is "chicanery," Plaintiffs allege, because it makes the vehicle appear "less expensive, and GM's artificial 'Destination Charge' can be used as a vessel for profit that would otherwise appear in the cost of the vehicle."

14

*Id.* Later in their complaint, however, Plaintiffs acknowledge that GM is required to list the destination charge separately on the window sticker. ER-108 (¶ 33).

Mr. Romoff alleges that his vehicle included a $1,195 destination charge. ER-106 (¶ 17). Mr. Siciliano alleges that his vehicle included a $995 destination charge. ER-106 (¶ 19). Plaintiffs do not allege the amount of the MSRP, charges for optional equipment, or the total sticker price for either vehicle. Plaintiffs also do not allege whether the amount each ultimately agreed to pay the dealer was less than the sticker price. While Plaintiffs allege that consumers cannot negotiate the destination charge (ER-103 (¶ 4)), they do not allege that consumers cannot negotiate the sticker price of a vehicle. Plaintiffs further allege that consumers would not expect any of the statutory-listed line-item charges to include profit, but they admit "consumers understand a lump sum price can include anything—including profit." ER-108 (¶ 32). Plaintiffs also concede that "GM can charge whatever it wants for its vehicles" (ER-46), and that the automotive market includes many other automotive manufacturer choices for consumers. ER-108 (¶ 30).

Mr. Romoff asserts three claims under California law: (1) violation of the Unfair Competition Law ("UCL"), Cal Bus. & Prof. Code § 17200 *et seq.*; (2) violation of the Consumer Legal Remedies Act ("CLRA"), Cal Civ. Code § 1750 *et seq.*; and (3) unjust enrichment. ER-113-116 (¶¶ 58-70); ER-118-119 (¶¶ 88-94). Mr. Romoff asserts these claims on behalf of himself and a proposed class of all consumers who purchased or leased a new or used GM vehicle in California and paid a destination charge within the statute of limitations period. ER-110 (¶ 44).

Mr. Siciliano asserts two claims under New Jersey law: (1) violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-2; and (2) unjust enrichment. ER-116-119 (¶¶ 71-94). Mr. Siciliano asserts these claims on behalf of himself and a proposed class of all consumers who purchased or leased a new or used GM vehicle in New Jersey and paid a destination charge. ER-110 (¶ 44). Like the proposed California class, the proposed New Jersey class is not restricted to any particular timeframe, but only by "the applicable statute of limitations." *Id.*

**C.** **The district court dismissed Plaintiffs' claims, holding that whether the destination charge includes profit is not deceptive, and therefore is not fraudulent, unlawful, unfair, or unjust under California or New Jersey law.**

GM filed a motion to dismiss the complaint under Fed. R. Civ. P. 12(b)(6), which the district court granted. ER-11. As to Plaintiffs' UCL, CLRA, and NJCFA claims, the court determined that Plaintiffs failed to state a plausible claim of deception under either a misrepresentation or an omission theory. The court noted that "the amount and existence of the Destination Charge and the total listed sticker price of GM's vehicles were fully disclosed," and "Plaintiffs received the vehicles they were promised at the prices they agreed upon." ER-18. Applying the "reasonable consumer" standard under California law—and the parallel "average consumer" standard under New Jersey law—the court concluded that "[r]easonable or average consumers would not be surprised to learn that the price of goods often includes profit for the seller." *Id.* The court determined that the term "Destination Charge" did not "reasonably imply an absence of profit," and there was thus no misrepresentation. *Id.*

In addressing Plaintiffs' omission theory, the district court noted that "[t]o be actionable under the CLRA, UCL, or NJCFA, the omitted

fact must be material." *Id*. The court determined that because the average or reasonable consumer would understand that the destination charge may include profit, the "additional disclosure of the fact that the charge includes profit would not affect a reasonable or average consumer's understanding of the composition of the Destination Charge." ER-19. Because the alleged fact was immaterial, the court concluded GM had no duty to disclose any profit included in the window sticker's destination charge line item. *Id.*

The district court also dismissed Mr. Romoff's claims under the UCL's unlawful and unfair prongs.[1] The court reasoned that Mr. Romoff failed to plausibly allege a violation of any predicate law that could constitute an unlawful act under the UCL. *Id*. The court further reasoned that Mr. Romoff's unfairness theory fell with his fraud theory because it was based on the same allegations and Plaintiffs failed to plausibly plead deception. ER-20. The court also dismissed the unjust enrichment claims

---

[1] The parties used the plural term "Plaintiffs" in briefing the UCL claim below, as did the district court in its order. ER-19-20; 36; 53; 98. It should be clarified, however, that only one plaintiff (Mr. Romoff) asserted the UCL claim. ER-113 (¶ 59).

because those claims were based exclusively on the same allegations of deception that the court had already rejected. ER-20-21.

Nevertheless, the court left the door open for Plaintiffs to seek to amend their complaint. ER-21. Plaintiffs notified the court that they did not wish to pursue amendment and requested a final order of dismissal. ER-9. The court entered the requested order. ER-7. Plaintiffs appealed. ER-121.

## SUMMARY OF ARGUMENT

The AIDA does not place any restrictions on the manufacturer's asking price for a vehicle, including any of the line-item charges making up that price. As Plaintiffs put it, "GM can charge whatever it wants for its vehicles." ER-46. But that is only partly true: to compete in the free market, GM can charge only what consumers will pay. If consumers find GM's prices unacceptable, they will buy a vehicle manufactured by one of the numerous other automakers in the highly competitive automobile market. Plaintiffs found GM's asking prices acceptable, after admittedly reviewing the window stickers listing each of the three line-items that make up the total sticker price, and received the vehicles they wanted at the prices they ultimately agreed to pay their respective dealers.

Trying to salvage their fraud-based claims, Plaintiffs mischaracterize the destination charge as an "add-on" charge. Blue 4; ER-46; ER-103 (¶ 3); ER-107 (¶ 27). But none of the three line-item charges required by the AIDA—including the destination charge—is an "add-on" charge because they do not increase the manufacturer's sticker price; added together, they *are* the sticker price. In other words, the sticker price is merely the sum of the MSRP, optional equipment charge, and the destination charge. Consumers commonly use the sticker price as a starting point in negotiations with the dealer on what will culminate in either the actual sale price for the vehicle or no sale. Moreover, the displayed line-item charges and total sticker price allow consumers to consider whether the price is acceptable to them before they decide whether to take the next step of negotiating the sale price or signing a purchase contract. Accordingly, the district court correctly determined that Plaintiffs' complaint fails to adequately allege facts to support an inference that GM's alleged conduct is deceptive, unjust, or unlawful, and that GM's disclosure of the destination charge complied with the AIDA requirement that manufacturers divulge the amount charged to a dealer for the transportation of the automobile (15 U.S.C. § 1232(f)(3)).

Plaintiffs stake their appeal on their reading of a single, distinguishable California Court of Appeal decision, *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457 (2006). The *McKell* case involved inapposite add-on fees that increased the agreed-upon amount of home loans, and those fees were not disclosed until closing escrow on the home sale, when home buyers were on the verge of signing their loan contracts. Moreover, Plaintiffs ignore (and fail to inform this Court) that their unique reading of *McKell* conflicts with several other published California cases holding that there is no duty to disclose whether a charge includes profit or otherwise exceeds the defendant's costs. *See, e.g., Wayne v. Staples, Inc.*, 135 Cal. App. 4th 466, 484 (2006) ("In light of Staples's clear disclosure of the actual price it would charge its customers . . . whether the amount charged includes a 'surcharge' or profit for Staples was not misleading or deceptive."); *McCann v. Lucky Money, Inc.*, 129 Cal. App. 4th 1382, 1395 (2005) ("'Defendants are engaged in business for a profit. Their failure to disclose their own costs or profit margins is not, on its face, unfair.'") (citation omitted); *Shvarts v. Budget Grp., Inc.*, 81 Cal. App. 4th 1153, 1156 (2000) (holding that fuel charge imposed on car rental customers was not deceptive even though it "vastly

exceeded" the defendant's actual costs for gasoline because the amount charged per gallon was disclosed in the rental agreement). Accordingly, *McKell* does not salvage Plaintiffs' complaint.

The district court correctly reasoned that a reasonable consumer would understand that the destination charge—which was expressly disclosed on the window sticker and stated as part of the vehicle's total sticker price—may include profit. Plaintiffs thus failed to plausibly allege that they were deceived into overpaying for their vehicles or deprived of the opportunity to negotiate a lower sale price. Plaintiffs criticize the district court for using common sense, but the court correctly recognized that Plaintiffs' claims defy common sense. The Supreme Court has instructed courts to employ common sense when ruling on a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Likewise, this Court has held that common sense should guide trial courts in determining whether a plaintiff has stated a plausible claim of deception. *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1018 (9th Cir. 2020); *see also Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 1165-66 (2018).

The district court's order may also be affirmed on additional, independent grounds that were set forth in GM's motion to dismiss, but

22

not squarely addressed in the district court's decision, namely that Plaintiffs failed to allege actual damages on their state statutory claims or the inadequacy of legal remedies on their equitable claims.

## STANDARD OF REVIEW

This Court reviews de novo a district court's dismissal for failure to state a claim for relief. *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1053–54 (9th Cir. 2008).

## ARGUMENT

**A. The district court correctly dismissed Plaintiffs' misrepresentation and omission claims under the UCL, CLRA, and NJCFA because a reasonable or average consumer would understand that the destination charge, as part of the vehicle's total listed sticker price, may include profit.**

As Plaintiffs concede, the district court correctly determined that Plaintiffs' misrepresentation and omission claims must be evaluated from the objective perspective of the "reasonable consumer" under California law, and that of the "average consumer" under New Jersey law. Blue 15-16, 18. The "reasonable consumer" standard requires a plaintiff to "show that 'members of the public are likely to be deceived.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (citation omitted). The mere possibility that some consumers may be misled is not enough.

*Becerra v. Dr. Pepper / Seven-Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019). "Rather, the reasonable consumer standard requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Id.* at 1228-29 (citation omitted).

Similarly, under New Jersey law, "[t]he capacity to mislead is the prime ingredient of all types of consumer fraud." *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994). "Mere customer dissatisfaction does not constitute consumer fraud." *In re Van Holt*, 163 F.3d 161, 168 (3d Cir. 1998). Rather, "the business practice in question must be 'misleading' and stand outside the norm of reasonable business practice in that it will victimize the average consumer." *Turf Lawnmower Repair, Inc. v. Bergen Record Corp.,* 655 A.2d 417, 430 (N.J. 1995).

1.  **The district court correctly held that Plaintiffs failed to allege an actionable misrepresentation because the term "destination charge," which is merely part of the vehicle's total listed sticker price, does not plausibly infer the absence of any profit.**

The district court correctly held that the term "destination charge" is not an actionable misrepresentation under the UCL, CLRA, or NJCFA. The court began its analysis by noting that the dictionary definition of

the word "charge" is "the price demanded for something." ER-17. The court recognized the commonsense fact that "[r]easonable or average consumers would not be surprised to learn that the price of goods often includes profit for the seller." ER-18. For that reason, the term "destination charge . . . does not reasonably imply an absence of profit." *Id.* The court concluded that given the "common-sense understanding that a charge can include profit," there were no "facts to support an inference that [GM] made any affirmative misrepresentation." *Id.*

Plaintiffs argue that the district court erred by citing the dictionary definition of "charge" and by using common sense in considering their pleaded claims. Blue 27-33. But this Court frequently turns to the dictionary as a means of establishing a particular word's common understanding when evaluating misrepresentation claims under the UCL and CLRA. *See Moore v. Trader Joe's Co.*, 4 F.4th 874, 881 n.8 (9th Cir. 2021); *Moore*, 966 F.3d at 1018; *Becerra*, 945 F.3d at 1229. So have New Jersey courts in evaluating claims under the NJCFA. *See Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509, 516 (D. N.J. 2019); *cf. Cypress Point Condo Ass'n v. Adria Towers, L.L.C.*, 143 A.3d 273, 286 (N.J. 2016) (holding that the "common-sense approach" of interpreting terms in

insurance policies "often begins with an examination of dictionary definitions").

By using common sense, the district court did exactly what it was supposed to do at the motion-to-dismiss stage. The Supreme Court has held that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. And this Court has specifically held in the context of consumer fraud claims that "if common sense would not lead anyone to be misled, then the claim may be disposed of at a motion to dismiss stage." *Moore*, 966 F.3d at 1018.

Plaintiffs' claims defy common sense. Plaintiffs argue that consumers would interpret the term "destination charge" to be limited to the actual cost of delivering the vehicle to the dealer (Blue 4), which they opine is supported by the language of the AIDA. ER-108 (¶ 33). But as the district court correctly noted, the AIDA requires that the manufacturer list "the amount charged" to the dealer for transportation of the vehicle. ER-18 (citing 15 U.S.C. § 1232(f)(3)). And there is no dispute that GM satisfied that requirement. Had Congress intended to

limit the destination charge to Plaintiffs' preferred reading, it would have said so. *See Al-Nashiri v. Macdonald*, 741 F.3d 1002, 1009 (9th Cir. 2013) ("[T]he plain language of the statute . . . controls unless its application leads to unreasonable or impracticable results.").

Plaintiffs do not allege that GM's destination charge listed on their window stickers incorrectly reported the "amount charged" to the dealer. Their grievance is only that the "amount charged" to the dealer allegedly includes profit for GM. But as the district court correctly observed, the term "amount charged . . . no more suggests the absence of a profit than the term 'Destination Charge' itself." ER-18.

In any event, regardless of how a consumer interprets the term "destination charge," it cannot deceive a consumer into overpaying for a vehicle or deciding not to negotiate a lower sale price, which is the theory underlying all of Plaintiffs' claims. Indeed, while Plaintiffs stress the importance of context when evaluating the meaning of a term (Blue 28-29), they mischaracterize the context in which the term "destination charge" appears on the window sticker. They incorrectly claim that it is an add-on charge that increases the price of a vehicle. Blue 4; ER-46; ER-103 (¶ 3); ER-107 (¶ 27). But as the AIDA makes clear, the destination

charge is simply part of the total listed sticker price for a vehicle, just like the two other requisite line-item charges on the window sticker—the MSRP and optional equipment charge. 15 U.S.C. § 1232(f). The destination charge, therefore, is simply part of the "price demanded" for the vehicle, which a consumer can accept, reject, or negotiate.[2] And common sense dictates that a reasonable or average consumer would understand that the price demanded for a vehicle is likely to include profit for the manufacturer, dealer, or both.

Plaintiffs concede this point, noting that a reasonable or average consumer would expect profit in the "price" of a vehicle, although they conflate the MSRP with the total sticker price and incorrectly argue that the destination charge is a line-item component of the MSRP. Blue 29. In fact, the AIDA requires the MSRP and destination charge to be separately listed line-item charges. 15 U.S.C. § 1232(f). And Plaintiffs'

---

[2] Plaintiffs allege that consumers "are not allowed to negotiate" the destination charge itself. ER-103-04 (¶ 4). Even assuming that were true, it is irrelevant because the destination charge is but one component of the total sticker price, and it is common knowledge that consumers can— and commonly do—negotiate the total sticker price with the dealer. Notably, Plaintiffs are silent on whether they negotiated (or even attempted to negotiate) a sales price that was less than the sticker price.

complaint concedes that each was separately listed on the window stickers affixed to their respective vehicles, which they reviewed before purchasing the vehicles. ER-12-13; ER-105 (¶ 13); ER-106 (¶ 19).

Plaintiffs' concessions reveal the fundamental flaw in their theory. Plaintiffs would have paid the same if GM had rolled the destination charge (and any alleged profit) into the MSRP, as Plaintiffs allege GM should have done. ER-107 (¶ 27). While doing so would have violated the AIDA, it would have made no difference to the sticker price of either vehicle. It would have simply increased one line-item charge (the MSRP) while altogether omitting another line-item charge (the destination charge). The sticker price, including any profit in that price, would have remained the same.[3]

---

[3] For example, assume a vehicle has an MSRP of $40,000, optional equipment charge of $5,000, and a destination charge of $1,000. The total listed sticker price would be $46,000 (the sum of all three line items), some portion of which a reasonable or average consumer would understand to necessarily include profit. If the destination charge were instead rolled into the MSRP and not listed as a separate charge, the MSRP would be $41,000 and the optional equipment charge would be $5,000, for the same total sticker price of $46,000, some portion of which a reasonable or average consumer would understand would include profit. Neither the sticker price nor any amount of profit in that price would change. Thus, there is no plausible basis for claiming deception, whether it be under a misrepresentation or omission theory.

This critical and incontestable fact distinguishes the destination charge from the hypothetical add-on charge Plaintiffs propose in their opening brief. Plaintiffs ask the Court to suppose that a manufacturer "systematically overcharged its consumers for a 'Taxes Charge,' using some of the 'Taxes Charge' to pay sales tax, but keeping the rest as profit." Blue 30. But unlike the destination charge, taxes are an add-on charge that increases the agreed-upon sales price, and which do *not* appear on the window sticker mandated by the AIDA. Indeed, Plaintiffs' vehicles undoubtedly incurred tax charges over-and-above the price they agreed on with the dealer.

The destination charge, as part of the manufacturer's sticker price for a vehicle, is fundamentally different from taxes or other add-on charges. Accordingly, Plaintiffs' add-on theory does not disturb the district court's correct conclusion that Plaintiffs failed to plausibly allege that the term "destination charge" is an actionable misrepresentation under the UCL, CLRA, or NJCFA.

**2.  The district court correctly held that Plaintiffs failed to allege an actionable omission because a disclosure that the destination charge includes profit would be immaterial to a reasonable or average consumer.**

The district court also properly dismissed Plaintiffs' omission claims under the UCL, CLRA, and NJCFA. ER-18-19. Under each statute, an alleged omission is not actionable unless it relates to a material fact. *See Hodsdon v. Mars, Inc.*, 891 F.3d 857, 862-63 (9th Cir. 2018) (discussing materiality element in the contexts of UCL and CLRA claims); N.J. Stat. Ann. § 56:8-2 (providing that the NJCFA prohibits fraud relating to "any material fact"). Materiality is judged from an objective reasonable consumer standard under both California and New Jersey law. An omitted fact is considered "material if a reasonable consumer would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question." *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) (citation omitted); *Peters v. U.S. HUD*, Civil No. 04:06057 (RBK), 2006 U.S. Dist. LEXIS 4727, at *17 (D. N.J. Feb. 1, 2006) (applying same standard of materiality for claim under the NJCFA).

For the same reasons that Plaintiffs' affirmative misrepresentation theory fails—a reasonable or average consumer would not expect the

destination charge to exclude profit—the district court was also correct that whether alleged profit is included in the destination charge is not a material fact requiring disclosure. ER-19.[4] More specifically, a disclosure that the destination charge may or does include profit would not be important to the purchase decision of a reasonable consumer because the destination charge is simply part of the vehicle's total sticker price, which, as Plaintiffs concede, a reasonable consumer would expect to include profit.

Plaintiffs argue that they have sufficiently alleged materiality based on this Court's opinion in *Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013). Blue 38-39. But *Hinojos* addressed a different situation. In that case, the plaintiff alleged that the defendant falsely advertised merchandise as being "on sale" from a higher original price. 718 F.3d at 1101. The Court recognized the commonsense fact that consumers consider "on sale" advertisements important because such advertisements induce consumers to make purchases they might not otherwise make on the belief that they are saving money. *Id.* at 1107.

---

[4] Plaintiffs argue that the district court did not consider GM's materiality argument. Blue 35, 38-40. But the district court did consider materiality in the context of Plaintiffs' omission-based claims. ER-19.

By contrast, the destination charge here provides no such inducement. Unlike the allegedly false "on sale" advertisement in *Hinojos*, there is no dispute that the destination charge was fully disclosed on the window sticker and included in the total sticker price of Plaintiffs' vehicles.

Similarly misplaced is Plaintiffs' reliance on *Barry v. Arrow Pontiac, Inc.*, 494 A.2d 804 (N.J. 1985). Blue 39. In that case, the New Jersey Supreme Court did not even address the materiality element of the NJCFA. Nor did the court address the factual situation presented here: whether consumers would consider it important to know if a particular charge includes profit when that charge is expressly included in the product's total asking price. Plaintiffs quote the *Barry* court's commonsense observation that "the purchase of an automobile represents a significant investment for most people." 494 A.2d at 812; Blue at 39. That is undoubtedly true, but it cuts against Plaintiffs' argument for less disclosure (rolling the destination charge into the MSRP) and instead favors what the AIDA requires and what GM did here: providing a specific, line-item breakdown of the MSRP, optional

equipment charge, and destination charge, which altogether add up to the vehicle's total sticker price.

Plaintiffs' arguments serve to underscore the fundamental flaw in their theory. The reality is that by disclosing the MSRP, optional equipment charge, destination charge, and total price on the window sticker, GM provides consumers the means by which to readily compare prices across makes and models of other automakers. To the extent a consumer is interested in comparing makes and models based on the three line-item charges, they can do so. Ultimately, what matters is that a reasonable consumer understands the commonsense fact that a vehicle's total price necessarily includes any profit for the manufacturer, which necessarily must be realized in one, two, or all three line-item charges that constitute the total sticker price. And because the total price is simply the sum of the three line items charged, it is immaterial whether profit is included in one or more of the three line-item charges: the MSRP, optional equipment charge, and/or destination charge. Accordingly, the district court properly dismissed Plaintiffs' omission claims for lack of materiality.

3.   **The California Court of Appeal's decision in *McKell* is factually and legally distinguishable, and is limited to only one of Plaintiffs' claims.**

Plaintiffs' claims are not saved by *McKell*, the case on which Plaintiffs almost exclusively base their appeal. Blue 1, 9-12, 20-25, 28. As an initial matter, Plaintiffs vastly overstate the precedential effect of an intermediate state appellate court decision. This Court has made clear that the "[d]ecisions of the six district appellate courts [of California] are persuasive but do not bind each other or us." *Muniz v. UPS*, 738 F.3d 214, 219 (9th Cir. 2013); *accord McGlothlen v. Dep't of Motor Vehicles*, 71 Cal. App. 3d 1005, 1017 (1977) (acknowledging "one division or district may decline to follow a prior decision of a different district or division"). Federal courts "are bound only by the decisions of a state's highest court and not by decisions of the state's intermediate appellate court when considering state-law issues sitting in diversity jurisdiction." *Keller v. Elec. Arts Inc.*, 724 F.3d 1268, 1278 (9th Cir. 2013).

A federal court sitting in diversity must "predict how the highest state court would decide the issue." *Id.* (citation omitted). To make this prediction, the decisions of intermediate appellate courts are but one source of guidance a federal court may use, along with "decisions from

35

other jurisdictions, statutes, treatises, and restatements." *Id.*; *see also DW Aina Le'a Dev., LLC v. Haw. Land Use Comm'n*, 918 F.3d 602, 607 (9th Cir. 2019) (holding that intermediate appellate court decisions are not binding, but they can provide guidance). While this Court will "generally" follow an intermediate appellate court opinion unless the court is "convinced that the California Supreme Court would reject it," *Tompkins v. 23andMe, Inc.*, 834 F.3d 1019, 1025 (9th Cir. 2016) (citation omitted), that general rule applies only to state appellate court cases that are on point. *Id.* at 1027 (declining adherence to several state appellate court cases because they did not directly address the issue before this Court). *McKell* does not provide persuasive guidance for four reasons.

*First*, *McKell* is distinguishable. *McKell* involved add-on costs that increased the cost of the product at issue, unlike the destination charge in this case. There, the plaintiffs had obtained federally-backed home loans from the defendant, Washington Mutual. 142 Cal. App. 4th at 1465. In addition to the agreed-upon principal and interest, Washington Mutual charged the plaintiffs certain closing costs, including the "costs of automatic underwriting and wire transfers," as well as a "tax services fee." *Id.* The amount of the closing costs was especially important to

consumers because the very purpose of federally-backed mortgages was "to increase the affordability of home ownership by reducing the cost of borrowing." *Id.* at 1466.

The record also showed that several years before plaintiffs obtained their home loans, the federal government had required lenders of federally-backed loans to begin using automated underwriting software that reduced the cost of underwriting to just $20 per loan. *Id.* Despite this, Washington Mutual charged underwriting fees between $250 and $400 per plaintiff. *Id.* Similarly, the fees for wire transfers and tax services were more than Washington Mutual had paid vendors to perform those services. *Id.* at 1466-67. The amounts of these fees were *first* disclosed to the plaintiffs on the HUD-1 settlement statement at the time of closing. *Id.* at 1465.

In contrast to the add-on fees in *McKell*, the GM destination charge is simply part of the total sticker price and is expressly disclosed up front when consumers are, literally, at the window-shopping stage. To be analogous to the add-on fees in *McKell*, the destination charge would need to be *in addition* to the sticker price—and it would need to be first disclosed when consumers are sitting down to sign their purchase

contracts.[5] Cases like *McKell* that are factually distinguishable do not provide guidance to federal courts. *Tompkins*, 834 F.3d at 1027.

*Second*, Plaintiffs' attempt to analogize *McKell* to their complaint is misplaced because such a novel reading of *McKell* would necessarily conflict with other published California Court of Appeal cases, none of which is mentioned in Plaintiffs' opening brief. Those other cases *are* factually analogous to Plaintiffs' case. For example, in *Shvarts*, 81 Cal. App. 4th 1153, the trial court granted the defendant's demurrer on the plaintiffs' UCL and CLRA claims, which were based on the allegation that the plaintiffs were overcharged for the cost of refueling cars they had rented from the defendant. Specifically, the plaintiffs alleged the rental agreement stated a charge of $3.58 per gallon of gasoline, which at the time was "triple the prevailing retail price of gasoline" and thus "vastly exceeded" the defendant's actual fuel costs. *Id.* at 1156. The California

---

[5] For example, assume that the MSRP of a vehicle was $40,000, the optional equipment charge was $5,000, and there was no listed destination charge, for a total sticker price of $45,000. The consumer accepted this price without further negotiation. If just before signing the purchase contract the consumer was told that there was a destination charge of $1,000, that would be an add-on charge because it would increase the agreed-upon price of the vehicle from $45,000 to $46,000. Those are not the facts alleged here.

Court of Appeal affirmed dismissal in *Shvarts*, noting that the cost could not be "claimed as a 'surprise' given that the amount per gallon" was "clearly printed on the first page of the rental agreement." *Id.* at 1160.

Similarly, in *McCann*, 129 Cal. App. 4th 1382, the California Court of Appeal affirmed the trial court's dismissal on demurrer of a UCL claim. The primary allegation was that the defendant (a money exchange company) charged consumers higher rates for currency exchange than it paid third-party vendors for that service, and kept the difference as profit. *Id.* at 1390-91. The court held that the defendant's alleged conduct did not constitute an unfair or fraudulent practice under the UCL. *Id.* at 1398. In reaching its decision, the *McCann* court relied in part on a federal district court case that had considered and rejected nearly identical claims, in which the federal court made the following unremarkable, commonsense observation: "Defendants are engaged in business for a profit. Their failure to disclose their own costs or profit margins is not, on its face, unfair." *Id.* at 1395 (citation omitted).

Finally, in *Wayne*, 135 Cal. App. 4th 466, the California Court of Appeal held that the defendant's unreported 100-percent markup of a particular fee was not deceptive under the UCL. *Id.* at 484. The court

affirmed summary adjudication for the defendant, holding as a matter of law that because the defendant provided a "clear disclosure of the actual price it would charge its customers . . . whether the amount charged includes a 'surcharge' or profit for [defendant] was not misleading or deceptive." *Id.*

Other California cases are in accord. *See Berryman v. Merit Prop. Mgmt., Inc.,* 152 Cal. App. 4th 1544, 1557 (2007) (affirming dismissal of UCL claim because defendant had no "duty to disclose a breakdown of its fees"); *Searle v. Wyndham Int'l*, 102 Cal. App. 4th 1327, 1334 (2002) ("Just as the hotel patron has no legitimate interest in what the hotel does with the large premium it earns from its mini bar snacks, the patron has no legitimate interest in what the hotel does with the service charge. The hotel is free to retain for itself the large premium, as well as the service charge . . . .").

Moreover, a non-binding but thoroughly reasoned federal case that post-dates *McKell* similarly rejected the allegation that a defendant had any duty to disclose profit in a particular fee. *See Graham v. VCA Antech, Inc.,* 2:14-cv-08614-CAS-JC, 2016 U.S. Dist. LEXIS 145778 (C.D. Cal. Sept. 12, 2016), *aff'd sub nom. Graham v. VCA Animal Hosps., Inc.,* 729

Fed. Appx. 537 (9th Cir. 2018). In *Graham*, the plaintiffs asserted UCL and CLRA claims based on the allegation that a "Bio Fee" was "nothing but an illegal profit enhancer" and was "designed to mislead customers to believe that [it] . . . is a legitimate or 'pass-through' charge or expense when its primary purpose is to generate profits." *Id.* at *11. The court concluded, "to the extent that VCA realized a profit from the Bio Fee, omitting any mention of such profit" on the invoices was not a deceptive act because there was "no authority holding that VCA had a duty to disclose either how it calculated the Bio Fee or whether the Fee may exceed any costs it might offset." *Id.* at *49.[6]

---

[6] Plaintiffs cite in passing *Aron v. U-Haul of Calif.*, 143 Cal. App. 4th 796 (2006), and *People v. Dollar Rent-A-Car Sys.*, 211 Cal. App. 3d 119 (1989). Blue 23. But like *McKell*, those cases are not on point and, therefore, do not provide guidance here. In *Aron*, the plaintiff alleged that U-Haul trucks contained an allegedly inaccurate fuel gauge and that when U-Haul rented its trucks, it did so partially fueled and then imposed a $20 fueling charge plus $2 per gallon gas charge on every consumer who could not prove they had re-fueled their rental truck to the beginning level. 143 Cal. App. 4th at 800-02. Because the U-Haul trucks allegedly did not have an accurate fuel gauge, the plaintiff alleged that consumers were forced to over-fuel the trucks to try to avoid the charge (and the defendant did not reimburse for excess fuel). *Id.* at 802. In *Dollar*, car rental consumers who were in accidents were charged for repairs at a higher amount than the actual cost of repairs, without "any notice" that they would incur such higher charges and without any ability to avoid those higher charges. 211 Cal. App. 3d at 129.

In simpler terms, *McKell* is distinguishable for two reasons: it involved an add-on charge and a late disclosure to the consumer. In contrast, the other cases (*Shvarts*, *McCann*, *Wayne*, *Berryman*, and *Searle*) involved a timely, disclosed fee or charge. The distinction is straightforward, and the district court did not commit error in declining to credit Plaintiffs' incorrect reading and misapplication of *McKell*. In any event, the district court's opinion is not based on the specific holding in any of these cases, nor was it required to be. Rather, the district court did what both the Supreme Court and this Court said it should do at the motion-to-dismiss stage: apply common sense to the specific facts of this case to determine whether Plaintiffs stated a claim for relief. *Iqbal*, 556 U.S. at 679; *Moore*, 966 F.3d at 1018.

*Third*, the fact that the court allowed the UCL claim in *McKell* to survive the pleadings stage is unpersuasive given the different pleading standards applicable in federal and state court. In California state court, "[t]he rules of pleading require . . . only general allegations of ultimate fact." *McKell*, 142 Cal. App. 4th at 1469. For that reason, "[a] pleading is adequate" in state court "so long as it apprises the defendant of the factual basis for the plaintiff's claim." *Id*. Moreover, determining

"[w]hether a practice is deceptive or fraudulent 'cannot be mechanistically determined under the relatively rigid legal rules applicable to sustaining or overruling of a demurrer.'" *Id.* at 1472; *see also Hacker v. Homeward Residential, Inc.*, 23 Cal. App. 5th 111, 120 (2018) ("In considering the merits of a demurrer . . . 'the facts alleged in the pleading are deemed to be true, however improbable they may be.'") (citation omitted).

Applying these standards, the court in *McKell* concluded that the defendant's actions "*may* constitute a deceptive business practice within the meaning of the UCL." 142 Cal. App. 4th at 1472 (emphasis added). The court did not hold, as a matter of law, that it did. And it did not consider whether those allegations were plausible. It simply found that the plaintiffs "may" have a claim under the specific facts alleged in that case and therefore could proceed past the more lenient pleading standard in state court. *Id.*

Federal court is different. To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter" to establish that the claim is actually plausible. *Iqbal*, 556 U.S. at 678. Determining plausibility requires a district court to use its "judicial

43

experience and common sense." *Id.* at 679. The district court applied this standard to the facts alleged by Plaintiffs and found their claims implausible. The fact that the *McKell* court reached a different conclusion after applying a different standard does not provide a basis for overturning the district court's decision here.

*Fourth*, the holding in *McKell* is plainly limited to the UCL. The *McKell* court affirmed dismissal of the plaintiffs' CLRA claim, holding that the claim was not based on the sale of goods or services. *Id.* at 1488. The court also affirmed dismissal of the plaintiffs' unjust enrichment claim, holding that no such cause of action existed under California law. *Id.* at 1490. And, of course, the *McKell* court had no reason to consider any claims under New Jersey law.

With their focus fixed on *McKell*, Plaintiffs do not argue that the district court was bound by any particular New Jersey case in ruling on Plaintiff Siciliano's claims. They cite *Barry*, 494 A.2d 804, but that case addressed a very specific and distinguishable issue under the NJCFA. That statute prohibits advertising that compares "the dealer's cost or inventory price." *Id.* at 807. The defendant in *Barry* (a car dealer) used the term "dealer invoice" in an ad, which the court found was sufficiently

close to the statutorily prohibited terms to be actionable. *Id.* at 812. The advertisement in *Barry* did not actually disclose the amount of the "dealer invoice." *Id.* at 807. In contrast, here there is no statutory prohibition on use of the term "destination charge," and there is no dispute that GM disclosed the amount of the destination charge as a separate line item and included it in the total window sticker price of Plaintiffs' vehicles as required by federal law.[7]

In sum, the district court was not guided by *McKell* or the New Jersey cases that Plaintiffs cite in passing. The district court followed settled precedent for deciding motions to dismiss, including cases involving consumer fraud claims. The district court correctly determined that on the facts alleged in their complaint, Plaintiffs failed to state an actionable misrepresentation or omission claim.

---

[7] Plaintiffs also generally cite *Leon v. Rite Aid Corp.*, 774 A.2d 674 (N.J. Super. Ct. App. Div. 2001), but that case is distinguishable as well. In *Leon*, the defendant, Rite Aid, was accused of advertising that it would "meet or beat" competitors' prescription drug prices, but then failed to do so and even secretly charged certain customers more than standard prices. *Id.* at 676-77. That is not even remotely analogous to the facts alleged in Plaintiffs' complaint. There is no allegation that GM advertised either its destination charges or total sticker prices as being lower than those of its competitors, nor is there any allegation of secretly charging customers more.

**B.    Plaintiffs do not challenge the district court's determination that in the absence of any alleged predicate fraudulent act or statutory violation, Plaintiff Romoff's claims of unfairness and unlawfulness under the UCL, as well as Plaintiffs' unjust enrichment claims must be dismissed.**

The district court dismissed Plaintiff Romoff's claims of unfairness and unlawfulness under the UCL and Plaintiffs' unjust enrichment claims because they were all predicated on the same alleged fraudulent conduct that the court already deemed subject to dismissal. ER-19-21. For the reasons stated in Section A above, the district court's dismissal of Plaintiffs' misrepresentation and omission claims was correct and should be affirmed. Accordingly, the district court's dismissal of Plaintiffs' unjust enrichment claims and Mr. Romoff's UCL claims of unfairness and unlawfulness, should also be affirmed.

Plaintiffs do not argue that there is any independent basis to support these claims. Indeed, they appear to concede that their entire case hinges on deception, arguing that the only issue before this Court is whether they "plausibly alleged that reasonable consumers are likely to be deceived by General Motors' Destination Charge." Blue 3. Moreover, by failing to raise any other basis for reversal in their opening brief, Plaintiffs have waived any such argument. *Smith v. Marsh*, 194 F.3d

1045, 1052 (9th Cir. 1999) (holding that "arguments not raised by a party in its opening brief are deemed waived").

## C. The district court's order may be affirmed on alternative, independent grounds that the district court did not address.

This Court should affirm the dismissal for the reasons stated in the district court's order. Additionally, the district court's order may be affirmed on any of the independent grounds set forth in GM's motion to dismiss, even though the district court did not squarely address those grounds in its order. *See Hansen v. Dep't of Treasury*, 528 F.3d 597, 600 (9th Cir. 2007) ("Dismissal may be affirmed on any ground supported by the record, 'even if the district court did not reach the issue or relied on different grounds or reasoning.'" (quoting *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1149 (9th Cir. 2000))).

### 1. Plaintiffs failed to plausibly allege any actual damages on their UCL, CLRA, and NJCFA claims.

Plaintiffs' UCL, CLRA, and NJCFA claims all require a showing of actual damages. *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 885 (holding that UCL requires a plaintiff to "demonstrate some form of economic injury"); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1367 (2010) ("Relief under the CLRA is specifically limited to those who suffer damage . . . ."); *Thiedemann v. Mercedes-Benz USA*, LLC, 872 A.2d

783, 786 (N.J. 2005) (holding that the NJCFA requires a showing of "ascertainable loss"). Plaintiffs argue that they have sustained damages under the UCL, CLRA, and NJCFA because they were "overcharged" for their vehicles in the amount of any alleged profit in the destination charge. Blue 36-37. But Plaintiffs have failed to plausibly allege how any purported profit in the destination charge—as part of the vehicle's total sticker price—amounts to an overcharge. As an initial matter, Plaintiffs have not cited a single case accepting a claim that a defendant's mere profit in the sale of a product or service constitutes actionable damages to a consumer.[8]

Moreover, Plaintiffs cannot rest on their conclusory argument that they were overcharged. Rather, they must allege facts in their complaint that show they were overcharged, which they have not done. Because the line-item destination charge—just like the MSRP and optional

---

[8] Unsurprisingly, lower courts have rejected such a claim. *See Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1114–15 (N.D. Cal. 2016) (dismissing CLRA and UCL claims and holding that "Google's profit is not Plaintiff's damage"); *Zebersky v. Bed Bath & Beyond, Inc.*, Civil Action No. 06-cv-1735 (PGS), 2006 U.S. Dist. LEXIS 86451, at *7 (D. N.J. Nov. 28, 2006) (dismissing NJCFA claim and holding that "[t]he profit to the defendants is wholly distinct from the loss incurred by the plaintiff").

equipment charge—is simply part of the total sticker price, any profit included in the destination charge is reflected in the total sticker price. Notably, Plaintiffs did not (and still do not) contest this inescapable truism. As Plaintiffs concede, "consumers understand a lump sum price can include anything—including profit." ER-108 (¶ 32). The total sticker price is simply the "lump sum" of the MSRP, optional equipment charge, and destination charge, which Plaintiffs were free to accept, reject, or negotiate. Any profit in this lump sum is not an overcharge.

Plaintiffs' citation to *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741 (N.J. 2009), merely underscores the difference between what Plaintiffs actually alleged in their complaint, on the one hand, and a case involving an actual overcharge, on the other. Blue 36. In *Bosland*, the plaintiff agreed with the dealer on a price for a vehicle and then was charged an add-on fee that was represented by the dealer as a "Registration Fee." 964 A.2d at 744. The fee was higher than the actual state registration fee in New Jersey, and thus the amount of the overcharge was characterized as an undisclosed documentary service fee. *Id.* By separate state statute, any documentary service fee had to be separately disclosed and itemized, which the dealership failed to do. *Id.* This undisclosed fee represented an

actionable overcharge under the NJCFA because the plaintiff paid more for the vehicle than she would have otherwise paid. *Id.* at 750. In Plaintiffs' complaint here, however, there was no claim that any profit in the sales price was an overcharge.

Plaintiffs also cite *Hinojos*, 718 F.3d 1098, and *Kwikset Corp.*, 246 P.3d 877. Blue 36. *Hinojos* is distinguishable for the reasons discussed in Section A.2 above—namely that, unlike this case, *Hinojos* involved falsely advertising products as "on sale" when in fact they were not. *Kwikset* is likewise distinguishable because the allegation there was that the product was sold with a false "Made in U.S.A." label, which induced the plaintiffs to make a purchase they otherwise would not have made. 246 P.3d at 890. The "Made in U.S.A." label allegedly caused consumers to pay higher prices than they would have paid if they knew the product had actually not been made domestically, thereby resulting in consumers being overcharged. *Id.*

Here, Plaintiffs do not allege that the term "destination charge" caused them to believe the vehicles were worth more than they were. Nor was the amount of the destination charge, including any alleged profit, an overcharge since it was part of the total sticker price. Plaintiffs chose

to purchase their vehicles from the dealers at the prices they ultimately agreed on with the dealers, and any profit to GM does not represent an "overcharge." Accordingly, Plaintiffs have failed to plausibly allege facts supporting the essential element of actionable damages to sustain their claims under the UCL, CLRA, or NJCFA.

## 2. Plaintiffs failed to allege the absence of adequate legal remedies on their equitable claims.

Both Plaintiffs assert unjust enrichment claims. ER-118-19 (¶¶ 88-94). In addition, Mr. Romoff's UCL claim sounds in equity because his remedies are "limited to injunctive relief and restitution," *Kasky v. Nike, Inc.*, 45 P.3d 243, 249 (Cal. 2002) (citation omitted), and while the CLRA allows for monetary damages, Mr. Romoff seeks only the equitable remedy of injunctive relief. ER-115 (¶ 70) ("Plaintiff seeks only injunctive relief."). In addition to the reasons set forth in the district court's order dismissing Plaintiffs' equitable claims, dismissal is warranted pursuant to the relatively recent decision in *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020).

In *Sonner*, this Court affirmed the dismissal of the plaintiff's claims for restitution under the UCL and CLRA because the plaintiff failed to allege in the complaint that she lacked an adequate legal remedy. *Id.* at

844. The Court held that "a federal court must apply traditional equitable principles before awarding restitution under the UCL and CLRA," and that "state law cannot expand or limit a federal court's equitable authority." *Id.* at 841. The Court held "that the traditional principles governing equitable remedies in federal courts, including the requisite inadequacy of legal remedies, apply when a party requests restitution under the UCL and CLRA in a diversity action." *Id.* at 844.[9] In this case, as in *Sonner*, Plaintiffs' equitable claims are subject to dismissal because the complaint does not allege that they lack an adequate legal remedy.

Plaintiffs try to avoid *Sonner* for three reasons, none of which is persuasive. First, Plaintiffs argue that *Sonner* did not alter Fed. R. Civ.

---

[9] While *Sonner* did not involve an unjust enrichment claim, the same rationale applies because unjust enrichment is an equitable claim that provides for the remedy of restitution. *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (holding that under California law unjust enrichment is a "quasi-contract claim seeking restitution") (citation omitted); *Ortiz v. Goya Foods, Inc.*, Civil Action No. 19-19003 (SRC), 2020 U.S. Dist. LEXIS 58854, at *15 (D. N.J. Apr. 3, 2020) (holding that unjust enrichment is an equitable claim under New Jersey law that provides for restitution). Moreover, because federal equitable principles apply, *Sonner* is controlling on Mr. Siciliano's unjust enrichment claim. But even if New Jersey law were to apply (and it does not for this point), it is consistent with the federal principles applied in *Sonner*. *See Ortiz*, 2020 U.S. Dist. LEXIS 58854, at *15-16 (holding that "a claim for unjust enrichment cannot survive where there is an adequate remedy at law").

P. 8(a)(3), which allows a plaintiff to plead in the alternative. Blue 45-46. That is true, but it misses the point. As one district court explained, "[t]he issue is not whether a pleading may seek distinct forms of relief in the alternative, but rather whether a prayer for equitable relief states a claim if the pleading does not demonstrate the inadequacy of a legal remedy. On that point, *Sonner* holds that it does not." *Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 907 (N.D. Cal. 2021). The complaint in this case does not even make the conclusory allegation that the available legal remedies are somehow inadequate, much less does it actually plausibly allege any inadequacy. And Plaintiffs declined the district court's invitation to pursue amendment of their complaint. Consistent with Rule 8 and *Sonner*, Plaintiffs could have attempted to plead inadequacy in the alternative in either their original complaint or a proposed amended complaint, but they declined to do so. ER-8.

Second, Plaintiffs argue that *Sonner* applies only if the legal claims are dismissed on "the brink of trial." Blue 47. But nothing in *Sonner* indicates that the Court's ruling was so limited, and numerous "district courts have rejected a plaintiff's attempt to distinguish *Sonner* based on the procedural posture of the case." *Shay v. Apple Inc.*, Case No.

20cv1629-GPC(BLM), 2021 U.S. Dist. LEXIS 84415, at *10 (S.D. Cal. May 3, 2021) (collecting cases). *Sonner* is premised on the fact that the "operative complaint" in that case did "not allege that [plaintiff] lacks an adequate legal remedy." *Sonner*, 971 F.3d at 844. And the Court's discussion makes clear that what matters for federal equitable principles is whether inadequacy of legal remedies is demonstrated in the operative complaint, regardless of whether the operative complaint is filed at the beginning of the case or later amended.

Third, Plaintiffs argue that *Sonner* applies only to equitable claims seeking restitution for past harm, and that it does not apply to prospective injunctive relief for future harm. Blue 47. But numerous district courts have rejected this very argument, holding that *Sonner* applies equally to injunctive relief. *Shay*, 2021 U.S. Dist. LEXIS 84415, *7-8 (collecting cases). These cases are correct because equitable relief, in whatever form, implicates the restrictions on a federal court's equitable authority. Indeed, the Supreme Court case on which *Sonner* is based, *Guaranty Trust Co. v. York*, 326 U.S. 99 (1945), did not distinguish between various forms of equitable relief. *See Sonner*, 971 F.3d at 841 (citing *York's* instruction that "[e]quitable relief" generally, not just

54

restitution, can be obtained in federal court only if an adequate legal remedy does not exist).

Moreover, while Mr. Romoff makes the conclusory allegation that GM "contin[ues] to engage in these deceptive and illegal practices" (ER-115 (¶ 68)), he cannot plausibly allege any risk of future harm.[10] Indeed, he does not allege that he has any plans to purchase a GM vehicle in the future, which alone is reason to dismiss a claim for prospective injunctive relief. *See Ketayi v. Health Enrollment Grp.*, 20-cv-1198-GPC-KSC, 2021 U.S. Dist. LEXIS 127597, at *27-29 (S.D. Cal. July 8, 2021) (dismissing claim for injunctive relief because plaintiffs failed to allege that they would purchase defendant's product in the future). But even if he did, he is now on notice of the alleged deception, so he cannot plausibly claim that there is a "real or immediate threat" that he will sustain future injury. *Cimoli v. Alacer Corp.*, 546 F. Supp. 3d 897, 906 (N.D. Cal. 2021) (dismissing request for injunctive relief because plaintiff could not "reasonably claim that he has no way of determining whether Defendant's representations are true").

---

[10] Mr. Siciliano does not plead future harm, and in any event, he pleads only an unjust enrichment claim, for which restitution is the only equitable remedy available. *Ortiz*, 2020 U.S. Dist. LEXIS 58854, at *15.

## CONCLUSION

Plaintiffs' claims fail as a matter of law. The destination charge was disclosed on the AIDA-required window sticker, and a reasonable or average consumer would understand that the destination charge—as expressly part of the vehicle's total sticker price—may include alleged profit. This Court should affirm the district court's dismissal of the complaint.

Dated: July 15, 2022              Respectfully submitted,

**DYKEMA GOSSETT LLP**

By:      /s/ *James S. Azadian*

            James S. Azadian

Attorneys for Defendant-Appellee
General Motors LLC

## STATEMENT OF RELATED CASES

Appellee is unaware of any related cases pending before the Court.

Dated: July 15, 2022        Respectfully submitted,

**DYKEMA GOSSETT LLP**


By:      /s/ *James S. Azadian*
           James S. Azadian

Attorneys for Defendant-Appellee
General Motors LLC

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs
*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)  22-55170**

I am the attorney or self-represented party.

**This brief contains      9,999      words,** excluding the items exempted by

Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App.

P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[**X**] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5),
Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
[ ] it is a joint brief submitted by separately represented parties;
[ ] a party or parties are filing a single brief in response to multiple briefs; or
[ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature**      s/James S. Azadian      **Date** July 15, 2022
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                                 *Rev. 12/01/18*